## WEIGHTMAN *v.* CLARK.

1. This court concurs in opinion with the Supreme Court of Illinois that sect. 5 of art. 9 of the Constitution of that State of 1848 (*infra*, p. 257) imposes a limitation on the power of the legislature to authorize taxation by the municipal corporations or the political subdivisions of the State.

2. A congressional township is by the laws of Illinois merely a corporation for school purposes. It cannot, therefore, subscribe for stock in a railroad company, and issue its bonds in payment, nor levy a tax upon persons and property within its jurisdiction, to aid in building railroads.

APPEAL from the Circuit Court of the United States for the Southern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Henry Flanders* and *Mr. R. J. C. Walker* for the appellants.

*Mr. John I. Rinaker, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

By the Constitution of Illinois, adopted in 1848, counties were recognized as existing political subdivisions of the State, and the General Assembly was authorized to provide by a general law for a township organization, under which any county might come, whenever a majority of the voters should, at any general election, so determine. If a county did adopt a township organization, the management of its fiscal affairs by the county court might be dispensed with, and the business of the county transacted in such manner as the General Assembly should provide. Art. 7, sect. 6. Under the authority of this provision of the Constitution, an act was passed by the General Assembly authorizing such an organization, by which townships could be established and made bodies corporate, with certain defined governmental powers. Gross, Stat. 1869, p. 741.

By another statute each congressional township in the State was "established a township for school purposes." Id., p. 691. The business of such a township was to be done by three trustees, to be elected from time to time by the legal voters of the township, and who were made "a body politic and corporate, by the name and style of ' trustees of schools of township ——, range ——,' according to the number." The powers of these trustees related exclusively to the business of the public schools in the township. They had authority to lay off the township into school districts and apportion the school funds, and were charged with certain other duties connected with school affairs and school lands within their jurisdiction. They had no power to levy taxes. That was to be done by the directors of the several school districts which should be created.

Art. 9, sect. 5, of the Constitution of 1848 is as follows:—

"The corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. And the General Assembly shall require that all the property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts contracted under authority of law."

The Illinois Farmers' Railroad Company was incorporated Feb. 28, 1867, and by an amendment to its charter, passed April 15, 1869, the following provisions were made : —

"SECT. 2. It shall be lawful for the corporate authorities of the towns, townships, cities, and counties through which said road shall pass, to take stock in the said company ; and shall also be empowered to make assessments, levy taxes, and collect the same in the manner in which the said several towns, townships, cities, and counties assess and collect taxes, for the purpose of paying the said assessments on the subscriptions to the said stock or the interest accruing thereon, and the said towns, townships, cities, and counties may issue bonds, bearing interest, at any point they may designate, either within or without the State of Illinois, at a rate not exceeding ten per cent per annum, payable annually or semi-annually, as they may elect : *Provided,* that the said townships, cities, or towns shall not subscribe to the stock of the said company without submitting the said proposed subscription to a vote of the legal voters of their respective towns, townships, or cities, thirty days' notice of which shall be given, elections held and returns made as provided by the general election laws of this State : *And provided further,* that no such bonds shall issue, nor shall any interest be payable thereon or accrue, until said road is completed through the said town, township, city, or county : *And provided further,* that the subscriptions on the part of the said counties shall not be for a sum exceeding two thousand dollars per mile of the line of the said road in the said counties.

"SECT. 3. In counties not under township organization it shall be lawful for the trustees of schools to make subscriptions for their respective townships, and issue bonds as provided in the preceding section ; and for the purpose of paying the said subscriptions or bonds, or the interest thereon, shall levy a tax, not exceeding the rate of one per cent per annum, upon the taxable property of their respective townships, and shall, through their treasurer, certify the said assessment to the clerk of the county court of their respective counties, and it shall be the duty of the said clerk of the county court to carry out the tax so assessed upon the collector's book ; and the amount so raised by taxation shall remain in the hands of the treasurer of the proper county, and shall be employed by him in paying, first, the interest due on the said bonds, and then the principal, if any funds shall remain in his hands, and for no other purpose."

The county of Morgan, through which the road of this company passed, was not under township organization, and on the 1st of February, 1870, at an election called, the voters of congressional township No. 14 N., of range 9 W. of the third principal meridian, within that county, voted to subscribe to the stock of the company in accordance with the provisions of sect. 3 of the amended charter. Upon the authority of this vote the trustees of schools of the township made the subscription and issued thirty-two bonds of $1,000 each, bearing date Oct. 1, 1870, to make the required payment. These bonds were afterwards registered with the auditor of public accounts, and, upon his certificate to the clerk of the County Court of Morgan County, taxes were levied on the taxable property in the township to meet the interest as it fell due. In this way the interest for the years 1871, 1872, 1873, and 1874 was paid; but in 1875 the taxpayers of the township commenced this suit in a State court to enjoin any further taxation to meet the bonds, on the ground that there was no authority in law either for the subscription or the issue of the bonds. That suit was transferred by the bondholders from the State Court to the Circuit Court of the United States for the Southern District of Illinois, where, on final hearing, the prayer of the taxpayers, complainants, was granted. To reverse that decree this appeal was taken.

It is clear that art. 9, sect. 5, of the Constitution is a limitation on the power of the legislature to authorize taxation by public corporations or the political subdivisions of the State. The Supreme Court of the State has uniformly so decided. *Johnson* v. *Campbell*, 49 Ill. 316; *Harward* v. *St. Clair Drainage Co.*, 51 id. 130; *Madison County* v. *People*, 58 id. 456. The same court also decided, in *Trustees, &c.* v. *People* (63 id. 299), *People* v. *Dupuyt* (71 id. 651), and *People* v. *Trustees of Schools* (78 id. 136), that statutes substantially like the one now under consideration were unconstitutional, and consequently void, because the tax required was not for a corporate purpose. It is conceded that if these decisions are to be followed the judgment below was right.

The first of these cases was decided at the January Term, 1872, and the court then took occasion to say it was the first

instance in which the right of the trustees of schools to embark in railroad enterprises had been brought to their attention. The law then under consideration, like the one here, was not passed until 1869; and we infer from this and other circumstances that such legislation had not been common in the State before that time. The decisions since on the same question have all been one way; and this of itself would make it highly improper for us to depart from them, unless they were clearly wrong. As a rule, we treat the construction which the highest court of a State has given a statute of the State as part of the statute itself. It is only when, by giving such construction a retroactive effect, it will invalidate contracts which in our opinion were lawfully made, that we disregard them. Here, however, we find nothing of the kind. Taxation by municipal or public corporations must be for a corporate purpose. It is not always easy to decide whether a certain kind of tax is within or without this limitation; but we think it may be safely said that, as a general rule, a corporate purpose must be some purpose which is germane to the general scope of the object for which the corporation was created. Such we understand to be the effect of the Illinois decisions which are collected and commented on in *Hackett v. Ottawa*, 99 U. S. 86. A congressional township is one of the principal subdivisions which Congress has provided for in the survey of the public lands of the United States for the purposes of entry and sale. It is not necessarily a political subdivision of a State or of a county. When Illinois was admitted into the Union, section numbered sixteen in every surveyed township, or its equivalent, if the section had before that time been sold or otherwise disposed of, was granted the State " for the use of the inhabitants of such township, for the use of schools." 3 Stat. 430, c. 67, sect. 6. It was eminently proper, therefore, that the State should make these donations the points around which the public-school system should be organized. Hence the congressional or original surveyed townships were made public corporations for that purpose, and apparently for that alone. Taxation for school purposes only would be germane to such corporations, and no one would or could reasonably suppose that they were created for managing

the general affairs of a political subdivision of the State. As was very properly said in *People* v. *Trustees of Schools, supra*, "their creation is purely to aid in the great scheme of accomplishing universal education." They are pre-eminently public-school corporations, and in the absence of legislative power under the Constitution can no more tax the people to build railroads than an ordinary school district or an incorporated academy can use its funds in that way. A railroad may help the people in a school district, but it can hardly be said that the construction of a railroad is a school purpose. The existence of railroads may and undoubtedly will make schools more necessary, and school property more valuable; but the construction of railroads is not necessary either to the establishment or maintenance of schools. Railroads are the effect rather than the cause of schools.

Congressional townships under the name of the "trustees of schools" were incorporated for "school purposes" only. So the act of incorporation in terms declares. Taxation, by the corporate authorities, therefore on persons and property within the jurisdiction of such a township, to build railroads, is not taxation for a corporate purpose, and the decree below, which followed the decisions of the State court, was consequently right.

*Decree affirmed.*