THE CONGAREE CONSTRUCTION CO. v. COLUMBIA TOWNSHIP.

1. RAILROADS—TOWNSHIP BONDS.—There is no substantial difference between this case and *Floyd* v. *Perrin*, 30 S. C., 1. The township bonds in aid of the railroad upon which this suit is based are unconstitutional, the same, as in that case, not having been issued for a corporate purpose.

2. CONFLICT OF LAWS—COURTS—AUTHORITY—COMITY OF COURTS.— The decisions of the United States courts are not *binding authority* upon State courts upon questions involving the construction of State Constitutions or State laws.

3. CASES AFFIRMED—CRITICISED—EXPLAINED.—*Floyd* v. *Perrin*, 30 S. C., 1, affirmed. *Folsom* v. *Ninety-Six Township*, 159 U. S., 611, criticised. *State* v. *Whitesides*, 30 S. C., 582, and *State* v. *Neely*, 30 S. C., 587, explained.

4. STATUTES CONSTRUED—RAILROADS.—The acts of 1885 (19 Stat., 362,) and 1886 (19 Stat.,    ), incorporating the Newberry, Columbia and Laurens Railroad, are substantially the same as those considered in *Floyd* v. *Perrin*, 30 S. C., 1.

5. TOWNSHIP BONDS—RAILROADS.—Coupons sued on are not protected by the act of 1888 (20 Stat., 12).

Before BUCHANAN, J., Richland, fall term, 1896. Affirmed.

Action by the Congaree Construction Company against Columbia Township, of the county of Richland. Judgment of nonsuit. Plaintiff appeals.

*Messrs. John T. Sloan* and *Wm. H. Lyles,* for appellant, cite: *Bonds valid:* 23 S. C., 70; 25 S. C., 260; 6 Pet., 297; 11 Wheat., 368; 16 How., 432; 105 U. S., 72; 101 U. S., 677; 16 Wall., 689; 100 U. S., 52; 18 Wall., 71; 12 S. C., 282; 21 S. C., 573; 103 U. S., 411; 86 U. S., 227; 105 U. S., 237; 5 S. E. R., 128; 159 U. S., 682; 101 U. S., 407; 103 U. S., 562; 116 U. S., 356; 120 U. S., 759; 24 Ill., 75; 62 Ill., 268; 9 Hemp., 252; 100 N. C., 92; 13 S. C., 290. *Conflict of decisions:* 2 S. C., 228, 231; 5 S. C., 126; 7 S. C., 150; 5 S. C., 410. *Bonds affirmed:* 20 Stat., 12; 30 S. C., 579 and 588. *Statute of limitations:* Code, 111, sub. 2;

8 S. C., 129; 9 Wall., 483; 14 Wall., 282; 3 Wall., 381; 38 Amer. Dec., 318.

*Messrs. Abney & Thomas*, contra, cite: *Bonds void:* 30 S. C., 1, 579, 587; 45 Fed. R., 336; 47 Fed. R., 429; 1 Wall., 175. *Statute of limitations:* 113 U. S., 135; 5 S. C., 156; 2 S. C., 248; Code, 111, sub. 2; 22 N. Y., 57; 1 Cow., 513; 80 N. Y., 254; 8 Gray., 509; 11 Wheat., 392; 36 Tex., 648; 94 U. S., 315.

July 9, 1897.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER.   The plaintiff brings this action to recover the amount of certain coupons, with interest thereon, detached from certain bonds, alleged to have been issued by the county commissioners of Richland County, in behalf of Columbia township, under the authority, as it is claimed, of certain acts of the legislature which will be hereinafter more particularly referred to.   The complaint also prays for a writ of mandamus requiring the proper officers of the county to levy a tax upon the property within said township sufficient to pay the said coupons now past due, together with the interest thereon, and also to levy a tax in each year thereafter so long as the same may be necessary, to pay the bonds and coupons thereon as they shall become due and payable.

The defendant filed its answer setting up several defenses, which will be hereinafter noticed so far as may be necessary to determine the questions presented by this appeal.   It appears from the testimony, amongst other things, that the bonds from which the coupons sued on were taken were executed by the county commissioners for Richland County on the 1st of July, 1887, as the bonds of Columbia township, and were then delivered to the Columbia, Newberry and Laurens Railroad Company, with said coupons then attached thereto; that subsequently, to wit: on the 19th of April, 1889, a contract was entered into between said railroad company and the plaintiff company, whereby the latter

undertook to construct said railroad, and soon thereafter the said bonds, with the coupons still attached thereto, were delivered to the plaintiff company; that when this contract was entered into, and before the said bonds were delivered to the plaintiff company, the directors of that company were aware of the decision of the Supreme Court of this State in the case of Floyd *v.* Perrin, which was, in fact, rendered on the 30th of November, 1888; and that the coupons now sued on became payable, some on 1st July, 1888, and the others on the 1st July, 1889, and were not detached from said bonds until some time in the year 1891; and that said railroad was not finished through Columbia township and accepted by the railroad commissioners "until some time in the early part of 1890—the winter of 1889 or the early part of 1890."

At the close of the plaintiff's testimony, the defendant moved for a nonsuit upon four grounds: 1st. Because the acts of 1885 and 1886, purporting to confer authority upon the several townships along the line of the railroad therein referred to, to issue coupon bonds in aid of the construction thereof, are in conflict with sec. 8, art. IX., of the Constitution of 1868, and, therefore, said bonds and coupons were issued without any competent authority, and hence are void. 2d. That the two acts aforesaid are in conflict with sec. 20 of art. II. of said Constitution, inasmuch as they relate to more than one subject—one of which is not expressed in the title, and hence said bonds and coupons are void and no action can be maintained thereon. 3d. That the act of 1888 created no obligation on the part of Columbia township to pay the coupons sued on, as the conditions of that act were not complied with. 4th. That the action on said coupons is barred by the statute of limitations, more than six years having elapsed since their maturity before the commencement of this action.

This motion was heard by his Honor, Judge Buchanan, who, without passing upon the points raised by the second and fourth grounds, granted the nonsuit on the first and

third grounds, and rendered judgment that the complaint be dismissed.

From this judgment plaintiff appeals upon the following grounds: 1st. "Because his Honor granted the order of nonsuit, holding that the acts referred to were unconstitutional.    2d. Because his Honor did not hold that the coupons sued on were valid subsisting obligations of the defendant township, and did not refuse the motion for a nonsuit."    The defendant, according to the proper practice, gave notice that this Court will be asked to sustain the judgment appealed from, upon the two additional grounds hereinbefore set forth as grounds for the nonsuit, upon which the Circuit Judge did not pass.

We agree entirely with the Circuit Judge in the conclusions which he has adopted: 1st. That there is no substantial difference between this case and the case of *Floyd* v. *Perrin*, 30 S. C., 1, and hence that case must be followed until it is overruled by proper authority.

2d. That the coupons now sued upon are not protected by the provisions of the act of 22d December, 1888, 20 Stat., 12, because the interest which these coupons represent accrued prior to the completion of said railroad through said township, and prior to its acceptance by the railroad commissioners, and that act expressly provides that it shall not "be so construed as to authorize the levy and collection of any tax to pay the interest that may have accrued on such bonds before the completion of such railroad, as provided in this section."    Passing by the somewhat indefinite and general character of the exceptions upon which this appeal is based, we propose to consider the questions which, as we gather from the argument here, they were designed to present.    The first of those questions practically is, whether the Circuit Judge was in error in following the decision of this Court in the case of *Floyd* v. *Perrin, supra*.    It is contended, first, that instead of following the decision just mentioned, he should have followed two previous decisions of this Court—*Chamblee* v. *Tribble*,

23 S. C., 70, and *Railway Company* v. *Tribble*, 25 S. C., 260—in which it is claimed that this Court had twice before recognized the constitutionality of acts similar to those which were held unconstitutional in *Floyd* v. *Perrin*. The utter want of foundation for any such claim is so conclusively shown in the separate opinion in *Floyd* v. *Perrin*, in that passage beginning on page 20 of 30 S. C., that it is deemed unnecèssary to repeat the argument here.    It is there shown that the question presented in *Floyd* v. *Perrin*, was "not only not raised, but could not have been properly raised in either of those cases," and hence there is no foundation whatever for the claim now made.    This being so, it is very obvious that the argument based upon the principle, that if a contract when made is valid by the laws of the State as then expounded, its validity and obligation cannot be impaired by any subsequent act of the legislature or decision of the Court altering the construction of the law, loses all of its force; for the case of *Floyd* v. *Perrin* presented the first instance in which this Court was called upon to pass, or undertook to pass, upon such legislation as that which is relied upon to support the coupons sued in this case.

Again, it is urged that, inasmuch as the Supreme Court of the United States, in the case of *Folsom* v. *Ninety-Six Township*, 159 U. S., 611, has been called upon to pass upon the same questions as were considered and decided by this Court in *Floyd* v. *Perrin*, and has taken a different view from that adopted by this Court as to the constitutionality of the statutes there involved, this Court should now, with a view to securing uniformity of judicial decision, abandon its previous well-considered opinion and adopt the view taken by the Supreme Court of the United States.    While this Court fully recognizes the superior authority and binding force of all decisions of that distinguished tribunal in all cases involving the construction of the Constitution and laws of the United States, and is always ready to cheerfully follow and acquiesce in

such decisions, yet we do not recognize the superior author-
ity of that tribunal, or the binding force of its decisions,
involving only the construction or validity of our own State
Constitution and laws.   Upon such questions it is our sworn
duty to pass, untrammeled by the *dicta* of any foreign tribu-
nal, whether State or Federal, no matter how high its rank
may be, and to decide such questions according to our best
judgment.   Of course, we are always willing and anxious
to receive light from any source, but merely as a means of
informing and enlightening our own judgment, and not as
an *authoritative* declaration of what the law is in such a
case.   In other words, we regard the decision of the Su-
preme Court of the United States of a question involving
only the validity or construction of our own State Consti-
tution or laws as of no more force and effect, *as authority*,
than the decisions of the courts of final resort in any of our
sister States.   Its only force must be found in the strength
of its reasoning and the high character of the tribunal from
which it proceeds.   Now, it is quite certain that in *Folsom
v. Ninety-Six Township* there was no question involving
the validity or construction of the Constitution or laws of
the United States; but the sole question involved was as to
the validity of the Constitution and laws of the State of
South Carolina, and that the United States Court could
only take jurisdiction of that case by reason of the acci-
dental circumstance of the diverse citizenship of the parties.
In such a case, the general rule recognized by the Supreme
Court of the United States unquestionably is, that the rule
established by the State Courts, especially "with regard to
the law of real estate and *the construction of State Constitu-
tions and statutes*," should be followed by the Supreme
Court of the United States.   This general rule is expressly
recognized in the quotation made, at page 625 of 159 U. S.,
from the opinion of Mr. Justice Bradley, in *Burgess* v. *Se-
ligman*, 107 U. S., 20, where the rule, with the exceptions
thereto, are stated.   One of these exceptions seems to be of
cases where "the doctrines of commercial law and general

jurisprudence" are involved. And Mr. Justice Gray, in delivering the opinion of the Court, in *Folsom* v. *Ninety-Six Township*, immediately after making the quotation just referred to, calls attention to the fact that Folsom purchased the bonds in 1886, prior to the decision in *Floyd* v. *Perrin* (30th November, 1888), and to the fact that it was "alleged in the complaint, and admitted by the demurrer, that he purchased the bonds, relying upon their being legal and valid obligations of the township; and that at the time of their issue and purchase, these bonds, and like bonds of other townships, were regarded and treated as valid securities by the corporate authorities of the township, by the public, by the legal profession, and by the legislative, executive, and judicial departments of the State." That circumstance makes a wide distinction between that case and the one now under consideration; for, in that case, under the admitted allegations in the complaint, the plaintiff could claim the protection of a *bona fide* holder of negotiable paper obtained for value before maturity without notice of any vice in such paper; while in the present case no such claim could be made, as the undisputed fact is that the plaintiff company never obtained the bonds from which these coupons were clipped until after they had notice of the decision of this Court, in *Floyd* v. *Perrin*, holding such bonds and coupons to be invalid obligations.

But again, and without regard to this distinction between the two cases, we do not think that the decision in Folsom *v*. Ninety-Six Township affords any sufficient reason why this Court should abandon the conclusion reached by this Court, after full and able argument, in the case of Floyd v. Perrin. The reasoning employed in the opinion of the Supreme Court, in Folsom *v*. Ninety-Six Township, so far as we can perceive, adds nothing to the argument presented by Mr. Justice McGowan, in his very elaborate and able dissenting opinion, in Floyd *v*. Perrin, and, of course, it must be assumed (and the writer of this opinion knows that this assumption is well founded in fact)

that the Court gave careful consideration to that argument before rendering its decision, which was not then regarded as convincing, and is not sufficient now, even though indorsed by the distinguished jurist who prepared the opinion in Folsom *v.* Ninety-Six Township, to warrant this Court in reversing its deliberate opinion in Floyd *v.* Perrin, reaffirmed, as it was, in the case of *Whitesides* v. *Neely*, 30 S. C., 31, and expressly recognized in the subsequent case of *State* v. *Whitesides*, 30 S. C., at pp. 582–3, and, by necessary implication, also recognized in *State* v. *Neely*, 30 S. C., 587. It is, therefore, with no little surprise that we find the learned Justice, who delivered the opinion of the Supreme Court of the United States in Folsom *v.* Ninety-Six Township, using language which implies that he considered the case of Floyd *v.* Perrin practically overruled by the subsequent cases of State *v.* Whitesides and State *v.* Neely. It is difficult, if not impossible, to conceive how such a misconception could have arisen. In Floyd *v.* Perrin, this Court was called upon to pass upon the constitutionality of an act by which the legislature undertook to delegate to certain townships the power to create a debt, and by necessity the power to impose a tax for the payment of such debt, which it could not do under the express terms of sec. 8 of art. IX. of the Constitution of 1868, except for a *corporate* purpose; and as the Court, in Floyd *v.* Perrin, held that there was no corporate purpose, the statute was necessarily declared to be unconstitutional. But in the subsequent cases of State *v.* Whitesides and State *v.* Neely, this Court was called upon to pass upon the constitutionality of a totally different act (the act of 1888), passed for a totally different purpose. For, by the act of 1888, the legislature did not undertake to delegate any power, either of creating a debt or of imposing a tax for the payment thereof, to any subordinate agency of the government, but, on the contrary, the declared object of the act of 1888 was to impose upon certain townships debts, and to authorize taxation for the payment of the same, *by the inherent power of taxation vested in the legis-*

*lature* by the terms of the Constitution, and *not* to delegate
such power to any subordinate agency.   In the one case,
the power to delegate was subject to *two* limitations: first,
that the tax was to be for a *public* purpose, and, second,
that it must be for a *corporate* purpose; while in the other
case, where the legislature itself created the debt and au-
thorized the tax, the power was subject to only *one* limita-
tion, to wit: it must be for a public purpose.   Hence when,
as in the case of Floyd *v.* Perrin, which involved a *dele-
gated* power, the Court finding that, though the debt was
created and the tax authorized was for a *public* purpose, yet
the *corporate* purpose was wanting, the Court was com-
pelled to hold that the statute which undertook to delegate
the power was unconstitutional, because it failed to meet
*both* of the requirements or conditions upon which such
power could alone be delegated.   But in the subsequent
cases of Whitesides and Neely, which arose under a different
act, in which no question of *delegated* power was presented,
but only the power of the legislature itself *directly* exer-
cised, in which, so far as this question is concerned, there
was only *one* limitation—the *public purpose*—and the Court,
finding that this purpose was present, was compelled to hold
the statute constitutional.   The foregoing is but a brief,
condensed statement of what had been previously said, more
at large, in *State* v. *Neely*, 30 S. C., at page 603, *et seq.*
How, in the face of the views there presented, and substan-
tially repeated here, any one could, for a moment, suppose
that there was the slightest inconsistency between the cases
of Floyd *v.* Perrin and the subsequent cases of Whitesides
and Neely, passes our comprehension.   The statutes in-
volved were different, the purposes of those statutes were
different, and the constitutional provisions involved were
different, and it would have been remarkable if the conclu-
sions reached had not been different.   We think, however,
that we can perceive how it was the learned Justice, who
delivered the opinion of the Supreme Court of the United
States, fell into the error of supposing that the case of Floyd

*v.* Perrin was practically overruled by the subsequent cases
of Whitesides and Neely, for, after quoting, and quoting
correctly, the language appended by Mr. Justice McGowan
to his concurrence in the last named cases, Mr. Justice Gray
uses the following language: "As the debt thus held to be
imposed upon the township by the act of 1888 was *the debt*
represented by the bonds issued under the act of 1885," &c.
The use of the words "the debt," which we have italicized
in the preceding quotation, is misleading, and betrays an
entire misconception of the true and, what seems to us, the
plain meaning of the language used and the principles laid
down by this Court. It is very obvious from the whole
tenor of the decisions of this Court in Floyd *v.* Perrin, and
the subsequent cases, that the fundamental idea upon which
this Court proceeded was, that there never was any *debt*
created by the act of 1885, and hence none could have been
*represented* by the bonds issued, without authority, under
the so-called authority of the act of 1885. The true mean-
ing of the language used by Mr. Justice McGowan mani-
festly was, that the debt, which was for *the first time* cre-
ated by the *act of 1888*, should be represented, so far as
amount, time of payment, &c., were concerned, by the
bonds previously issued without authority, a form of ex-
pression simply used for the purpose of avoiding a useless
repetition of those particulars, and certainly *not* for the
purpose of even implying that those bonds originally rep-
resented any valid debt whatever, as that would have been
a flat contradiction of the declarations of the Court em-
phatically expressed in the very opinion to which this
language was appended. We must adhere, then, to the de-
cision in Floyd *v.* Perrin, and are unable to find any satis-
factory reason why that case should be overruled. We
have not deemed it necessary to repeat here the argument
upon which that case was decided, and content ourselves
with merely referring to the same.

It is contended, in the argument in reply, that the terms
of the acts upon which appellant relies are different from

those which were considered in the case of *Floyd* v. *Perrin*, and, therefore, the decision in that case is not conclusive of this. While it is true that some minor differences in the several acts have been pointed out, yet we think they are all substantially the same, and present precisely the same question as that decided in *Floyd* v. *Perrin*. The controlling question under all of these acts is, whether the legislature had the power to delegate to a township the power to create a debt, which necessarily involves the power to impose a tax for the payment of such debt, for any other than a corporate purpose; and we think it clear that no such purpose is shown in the acts under consideration here.

The next inquiry is, whether the coupons now sued on are protected by the provisions of the act of 1888, above referred to. The conceded fact being that the interest represented by these coupons had accrued and had become payable before the completion of the railroad through the township, it is too clear for argument that such coupons are not protected or provided for by the terms of the act of 1888. Indeed, this question was not pressed in the argument here, and in face of the undisputed facts, the express terms of the act of 1888 are a sufficient answer to the inquiry.

Having reached the conclusion that the judgment below must be affirmed, on the grounds hereinbefore considered, it becomes unnecessary to consider or express any opinion upon the additional grounds upon which the respondent claims a judgment of affirmance.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE: I concur, but may write a separate opinion.

MR. JUSTICE JONES did not sit in this case.