ALLEN v. ADAMS, MAYOR.

SCHOOL HOUSE—CORPORATE PURPOSE—BONDS.—A TOWN incorporated
    under the act of 1896, 22 St., 67, has the power under the act of
    1897, Code, 1902, 2021, to issue bonds for erecting a school house
    within the municipality, although the school be controlled by usual
    school authorities.

, · Petition in the original jurisdiction of this Court by J. H.
Allen for injunction against the town council of Edgefield,
to restrain them from issuing bonds for the erection of a
school building.    The amended petition is as follows:

"First. That your petitioner is a citizen of the county
of Edgefield, in the said State; and is a resident and taxpayer
in the town of Edgefield, situate in said county and State.

"Second. That W. W. Adams is the mayor of the said
town of Edgefield; and the following names compose the
board of aldermen: J. P. Ouzts, B. J. Crooker, E. H. Folk,
C. E. May, M. P. Wells and J. L. Caughman.

"Third. That your petitioner is informed and avers that
the said mayor and aldermen, constituting the town council
of the said town of Edgefield, have resolved to issue bonds of
the said town in the aggregate in the sum of $15,000, pay-
able thirty years after the date thereof, with interest at the
rate of five per cent. per annum, payable semi-annually, for
the purpose of building a school house within the corporate
limits of said town.

"Fourth. Your petitioner alleges that the said mayor and
aldermen constituting the said town council are without
authority of law to issue such bonds—for the reason that the
purpose for which said bonds are to be issued is neither a
public purpose nor a corporate purpose; that there is no au-
thority of law for the said town council to enjoy or exercise
any control over the schools in said town; and the said town
council is without authority to incur the expenses incident to
the erection of a school building, which is to be managed
and controlled without the interference, or co-operation,

or supervision of the authorities of the said town. That is to say, your petitioner alleges that the said school building, which the said town council proposes to erect by the proceeds of the sale of the bonds mentioned in paragraph three thereof, is to be erected on a lot of land situate within the corporate limits of the said town of Edgefield, which was conveyed by one Eldred Simkins, sr., on the 10th day of July, 1825, to Edmond Bacon, Whitfield Brooks, Matthew Mims, John S. Jeter, and Eldred Simkins—trustees of the Edgefield Village Academy, and to their successors in office—with the following limitations expressed in said deed, to wit: 'To have and to hold all and singular the premises before mentioned unto the said trustees and their successors in office for the express purpose of being used and employed by them as a site for a seat of learning or an academy, to them and their successors and assigns forever.' Your petitioner alleges that he is informed and believes that ever since the execution of said deed and unto the present time there has been maintained upon said lot a building for the educational uses of said town by the said board of trustees and their successors in office. That it is said to be believed that the building now on said lot is inadequate to the uses of the town for such educational purposes; and that, therefore, the said town council proposes to erect a building thereon for said purposes at the cost of about $15,000, which said sum is to be raised by the issuance and sale of the bonds hereinabove mentioned. Your petitioner alleges that he is informed and believes that the building so to be erected upon said lot is to be managed and controlled by the said board of trustees; and that the said mayor and aldermen, as he is informed and believes, will not have the direction of the management of the said institution; on the contrary, that the said institution of learning is to be managed and controlled by the existing board of trustees—being the successors of the board of trustees mentioned in the said deed of July 10th, 1825.

"Fifth. Your petitioner is informed and avers that the said town council claims to possess the power to issue said

bonds, by authority of the provisions of section 18 of an act
of the General Assembly of the said State, entitled 'An act to
provide for the incorporation of towns of not less than one
thousand nor more than five thousand inhabitants, approved
the fifth day of March, 1896;' but in reference thereto your
petitioner avers that the said town of Edgefield has never
been incorporated under the provisions of said act, and has
never become invested of the privileges, powers and immu-
nities prescribed thereby.

"Sixth. Your petitioner further alleges that the petition
addressed to the said town council, praying that an election
might be ordered for the purpose of determining whether or
not bonds should be issued for such purpose, was not signed
by a majority of the freeholders of said town, as required
by law; and that the notice issued by the said town council
that an election would be held for the purpose of determining
whether or not such bonds should be issued, was not pub- .
lished for the time required by law; and that the result of
such election did not authorize the issuance of such bonds.

"Seventh. Wherefore, your petitioner prays that the said
mayor and aldermen may be restrained and perpetually en-
joined from signing, sealing and issuing such bonds, in
accordance with their resolution so to do; and that the pro-
cess of this Court may forthwith issue, directed to the said
mayor and aldermen, requiring them to show cause on a day
to be appointed why they should not be restrained and
perpetually enjoined from issuing such bonds; and that in
the meantime an order may be issued by this honorable Court
preventing and restraining them from issuing such bonds
until the further order of this Court; and your petitioner as
in duty bound will ever pray."

To the rule issued on said petition the following return
was filed:

"Now come W. W. Adams, J. P. Ouzts, B. J. Crooker, E.
H. Folk, C. E. May, M. P. Wells and J. L. Caughman,
mayor and aldermen, constituting the town council in and

for the town of Edgefield, and for return to the rule to show
cause why the prayer of the petition herein should not be
granted, respectfully show unto the Court:

"First. That they admit the allegations made by and con-
tained in paragraphs one, two and three of the petition.

"Second. That they deny the allegations in paragraph
four of the petition, that they 'are without authority of law
to issue such bonds, for the reason that the purpose for which
said bonds are to be issued is neither of public purpose nor a
corporate purpose.' On the contrary, these respondents aver
that they are authorized by the law of the State in such case
made and provided to issue said bonds. In reference to
which these respondents respectfully show unto the Court,
that in and by the provisions of section 2021 of the Code of
Laws of South Carolina (1902), it is provided: 'It shall be
the duty of the municipal authorities of any incorporated city
or town of this State, upon the petition of a majority of the
freeholders of said city or town, as shown by its tax books,
to order a special election in any such city or town for the
purpose of issuing such bonds, for the purchasing, repairing
or improving the city or town hall, or park or grounds
thereof, market and guard house, enlarging, extending or
establishing electric light plants or other lights, or water
works, or sewerage, erecting, repairing or altering school
buildings, fire protection purposes, improvement of streets
and sidewalks, or any corporate purpose set forth in said
petition,' the only proviso in said section being: 'That the
aggregate bond indebtedness of any city or town shall never
exceed eight per cent. of the assessed value of the taxable
property therein.' These respondents further show that in
and by section 18 of an act of the General Assembly of said
State, entitled 'An act to provide for the incorporation of
towns of not less than one thousand nor more than five
thousand inhabitants,' it is provided that 'said town council
shall have power to borrow money for corporate purposes,
and to issue from time to time as occasion may require the
bonds of the corporation for the payment of the principal, of

which said town shall be at all times responsible,' the proviso in said section being that no such bond debt shall in any instance exceed the limit prescribed in the Constitution of this State; and that no bond debt shall be issued except upon the vote of the citizens of the municipality as provided in the Constitution. These respondents allege with reference to the said proviso in said section 2021, that the aggregate bonded indebtedness of the said town of Edgefield, including the bonds mentioned in the petition herein, does not equal, much less exceed, eight per cent. of the assessed value of the taxable property therein; and these respondents allege in reference to the proviso in said section 18, that the bonds which they now propose to issue have been authorized by a vote of the citizens of the municipality as provided in the Constitution.

"Wherefore, these respondents submit that it is not true, as stated in pargraph four of the petition, that they are without authority of law to issue said bonds; and that the statement in said paragraph, 'That there is no authority of law for the said town council to enjoy or exercise any control over the schools in said town,' is immaterial, if it be true.

"Third. The statement in paragraph five of the petition is true, as set forth in the next preceding paragraph hereof, that these respondents claim 'To possess the power to issue said bonds by authority of the provisions of section 18' of the act therein mentioned; but these respondents deny the averment of said paragraph, 'That the said town of Edgefield has never been incorporated under the provisions of said act.' In reference to which these respondents allege, that in and by section 25th of the said act, entitled as aforesaid, 'An act to provide for the incorporation of towns of not less than one thousand nor more than five thousand inhabitants,' it is provided: 'That any town of more than one thousand and less than five thousand inhabitants already chartered, which is desirous of surrendering its charter and accepting incorporation under this act, or whose charter is about to expire, may be incorporated under this act. The town council of

such town may submit the question to a vote of the qualified electors at an election ordered on twenty days notice. If the election results in favor of surrendering the old charter and accepting a charter under this act, the town council shall certify such result, accompanied by the sworn return of the managers of such election, to the secretary of state, who shall thereupon issue to said council a certificate of incorporation of said town, with the privilege, powers and immunities, and subject to the limitations prescribed in this act.' In reference to which these respondents allege that on the 24th day of December, 1879, the General Assembly of the said State passed an act entitled 'An act to renew and amend the charter of the town of Edgefield;' in the first section of which act it is provided: 'That all persons, citizens of the United States, who now own or may hereafter own dwelling houses in the village of Edgefield, and those who may occupy such dwelling houses under lease, shall be deemed and are hereby declared a body politic and corporate, and that the said village shall be called and known by the name of Edgefield, and its corporate limits shall extend and form the circumference of a circle whose radius shall be one mile, with the court house thereof for the centre.' That being thus chartered under the provisions of said act of 1879, the town council as authorized by the provisions of section 25 of the said general act of incorporation, heretofore submitted to the qualified electors of said town the question whether or not the said town shall surrender its charter and accept incorporation under said act. That the said election resulted in favor of surrendering the old charter and accepting a charter under said act; and the town council certified in writing the result to the secretary of state, together with the sworn return of the managers of said election, and the secretary of state issued to said town council a certificate of incorporation, which is hereto attached as a part of this return.

"Fourth. These respondents deny each and every allegation in paragraph six of the petition; and in reference thereto allege that all the steps provided by law, and all the require-

ments of law relating to the issue of bonds by said town, were carefully and strictly complied with. 1st. There was filed with the town council a petition praying that the town council should order a special election, 'For the purpose of issuing bonds for $15,000 for the erection of a public school building in said town,' which petition was signed by 101 of the freeholders within the corporate limits thereof; and these respondents allege that said number constitute more than a majority of the freeholders of said town—for as appears by the certificate of J. B. Haltiwanger, auditor of said town, hereto annexed, there were at said time only 185 freeholders within the corporate limits of said town. 2d. That on the 22d day of July, 1902, on which day said petition was filed, the town council ordered that an election should be held on the 23d day of August, 1902, for the purpose of determining whether or not the prayer of said petition should be granted, and whether or not the said town should issue its bonds for said sum for such purpose; and said notice of election was published in a newspaper published in said town for the full term of thirty days next preceding said election. 3d. That said election was held pursuant to said notice, at which election 96 of the qualified electors of said town voted upon said question—each and every one of whom voted in favor of the issuance of said bonds as prayed for in said petition; and the result of said election was duly certified in writing to the said town council, by the managers of said election. That thereupon these respondents, in obedience to the wishes of every citizen of the town who exercised the right to vote upon said question, resolved to issue said bonds, as stated in paragraph three of the petition herein.

"Wherefore, your respondents having full return made to all and singular the matters and things set forth in the petition herein, respectfully submit that the injunction for which the petitioner prays should not be granted; but, on the contrary, that they should be authorized to issue bonds in accordance with their said resolution, and that said bonds

shall be declared by this honorable Court, when so issued, to be valid obligations of said town."

*Mr. B. E. Nicholson,* for petitioner, cites: *As to corporate authority and corporate purpose:* 30 S. C., 1, 31, 579, 630; 49 S. C., 535; 50 S. C., 321; Con., art. VIII., secs. 3, 6; art. X., sec. 5; Code, 1902, 2021.

*Messrs. Sheppard Bros.,* contra, cite: *Are the bonds for a corporate purpose?* 10 Rich. L., 501; Code, 1902, 2021; 15 S. C., 593; 24 S. C., 68; Con., art. VIII., sec. 7; art. X., sec. 5; 101 U. S., 413; 30 S. C., 584.

May 27, 1903. The opinion of the Court was delivered by

MR. JUSTICE JONES. The petitioner applies to this Court for an injunction to restrain the authorities of the town council of Edgefield from issuing bonds in the sum of $15,000 for the purpose of erecting a school building within said town. The issue is made upon the facts stated in the petition and amended petition, which are not denied in the return and upon the facts stated in the return to which petitioner demurred. The petition as amended and the return thereto are officially reported herewith.

The petitioner is a citizen and taxpayer of the town of Edgefield and the respondents are the mayor and aldermen of said town, constituting its town council. The said town council have resolved to issue bonds of the said town in the sum of $15,000, payable thirty years after the date hereof, with interest at the rate of five per cent. per annum, payable semi-annually, for the purpose of building a school house within the corporate limits of said town. The original charter of the town of Edgefield, renewed and amended by the act of December 24th, 1879, was surrendered and the town became incorporated under the act of March 5th, 1896, entitled "An act to provide for the incorporation of towns of not less than one thousand nor more than five thousand

inhabitants," 22 St., 67, and thereby, on the 28th day of February, 1898, the town of Edgefield acquired the privileges, powers and immunities, and became subject to the limitations prescribed in said act. Under sec. 1999 of the Code of 1902, "The city councils and town councils of the cities and towns of the State shall, in addition to the power conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same, &c." The act of February 11, 1897, 22 Stat., 411, entitled "An act to amend section 1 of an act entitled an act to authorize special elections in any incorporated city or town of this State for the purpose of issuing bonds for corporate purposes, approved March 9, 1896, *so as to specify certain corporate purposes* (italics ours), and so as to validate certain bonds issued under the said act," provides: Sec. 1. "That it shall be the duty of the municipal authorities of any incorporated city or town of this State, upon the petition of a majority of the freeholders of said city or town, as shown by its tax books, to order a special election in any such city or town for the purpose of issuing bonds for * * * erecting, repairing or altering school buildings * * * or any corporate purpose set forth in said petition, &c.," with a *proviso* that the aggregate bonded indebtedness shall not exceed eight per centum of the assessed value of the taxable property therein; which need not be further noticed, as it is admitted by the demurrer to the return that the bonds proposed do not exceed such limit. The foregoing statute now appears as section 2021 of the Code of 1902. It also appears that all the requirements of law relating to the issue of said bonds were strictly complied with, as to petition by requisite number of freeholders, the notice of the election and its due publication, the requisite

vote of the qualified electors in favor of the issuance of the bonds, and the due declaration of the result of the election. The only issue in the case is one of law arising under the fourth allegation of the amended petition, in part as follows: "Fourth. Your petitioner alleges that the said mayor and aldermen constituting the said town council are without authority of law to issue bonds—for the reason that the purpose for which said bonds are to be issued is neither a public purpose nor a corporate purpose; that there is no authority of law for the said town council to enjoy or exercise any control over the schools in said town; and the said town council is without authority to incur the expenses incident to the erection of a school building which is to be managed and controlled without the interference, or co-operation, or supervision of the authorities of the said town."

From the foregoing statement as to the chartered powers of the town of Edgefield, there is no room for doubt that the erection of a school building within the corporate limits is a corporate purpose. It is expressly declared to be a corporate purpose. That being the case, it is needless to inquire whether such is a public purpose, but a very slight consideration of the purposes of a school building within a town, in the discipline and training of the youth of the community, in promoting an intelligent citizenship, in attracting to the town a desirable class of people, who build homes and enter into business in the town, in the tendency to create or enhance taxable property and other important public considerations, which readily occur to the mind as supporting the erection of a school building in convenient reach of the community, will demonstrate that such a purpose is a public one, and in a very high degree. But the petition states "that there is no authority of law for the said town council to enjoy or exercise any control over the schools in said town; and the said town council is without authority to incur the expenses incident to the erection of a school building which is to be managed and controlled without the interference, or co-operation, or supervision of the authorities of the said

23—66

town." These are but statements of legal conclusions which do not bind the respondents or the Court, even though they do not appear to have been specifically denied in the return. The Court judicially knows that such a building within a town would be subject to all proper police regulations of the town, and to that extent the building would be subject to the control and supervision of the municipal authorities just as other buildings in the town. It is doubtless true that the town council has no control over the schools in said town, for the very satisfactory reason that the Constitution of the State, in art. XI., devoted to the subject of education, and the statute laws of the State pursuant thereto, have placed jurisdiction over public schools in other officers, particularly selected for that purpose, and there is nowhere to be found any legislative attempt to confer power over schools in town councils.

It has already been shown that the allegation that the town council is without authority to incur the expenses incident to the erection of a school building, is in conflict with the express grant of such power to the town. But it is further argued that a municipal corporation has no power to issue bonds for the erection of a school building which is to be managed and controlled without the interference, or co-operation, or supervision of the town authorities, and it is said that in order to carry out such a purpose, it would be necessary for the town authorities to divest themselves of their corporate powers, and delegate them to others, which would be unlawful. Attention must here be directed to the case as made by the petition and to the constitutional and statutory provisions on the subject of schools, to which reference has already been made. By these it is manifest that the town council of Edgefield never had any power or control over schools or school buildings beyond such as properly belong to them under their power of police. Therefore, the town council in issuing the bonds for the purpose named would not divest themselves of or delegate to others any power over schools, for the very simple reason

that no power or control over schools was ever conferred on them. It has already been stated that the educational scheme of this State, as embodied in the Constitution and statutes, has wisely placed jurisdiction over schools elsewhere. The issuance of the bonds pursuant to the statute, whose terms and conditions have been complied with, would in no sense involve a delegation or divesting of corporate powers touching matters of police. It is perfectly competent for the legislature to prescribe what shall be a corporate purpose, unless some constitutional limitation or prohibition exists. The only corporate purpose prescribed in this connection is "erecting, repairing or altering school buildings," and the legislature, even if it had the power, did not see fit to attach to this corporate purpose any such regulations as that the building, when erected, should be managed by the town authorities.

In the case of *Copes* v. *City of Charleston,* 10 Rich., 491, the Court held that the city of Charleston, under a general grant of power to make such regulations as "shall appear to them requisite and necessary for the security, welfare and convenience of said city, &c.," had the power to subscribe to the stock of railroad companies within or without the State, and to tax the inhabitants of the city to pay such subscriptions. In the case of *Brown* v. *C. & L. R. R. Co.,* 13 S. C., 290, the Court sustained as constitutional a subscription by the county of York to the capital stock of a railroad company. Conceding fully that a corporate purpose must be some purpose germane to the general scope of the objects for which the corporation is created, it is difficult to see how subscriptions or donations to the building of a railroad could be germane to the general objects for which towns and counties are created, while the building of a school house within the town limits would not be germane to any corporate purpose of the town. Would not a school building within the town of Edgefield promote the convenience, welfare and order of its inhabitants? Are traffic and transpor-

tation by a railroad more germane to municipal purpose than the moral and intellectual training of its citizens?

The language used by the Court in *Floyd* v. *Perrin,* 30 S. C., 7, 8 S. E., 14, *et seq.,* does not support a contrary view. That case had under consideration the validity of township bonds in aid of railroads, and the bonds were held invalid for the want of a township corporate purpose to be promoted by their issuance. The point of invalidity was found in the nondescript character of the township corporation, which had not been created for any purpose whatever except the issuance of the bonds. How different is the case before us! The town of Edgefield is a full fledged municipal corporation, with general power and purpose to do that which shall appear to them necessary and proper for the security, welfare and convenience of said town, or for preserving health, peace, order and good government within the same, and in addition to this, "the erecting, repairing or altering of school buildings," specifically declared to be a corporate purpose of said town, and it cannot be denied that such a specific corporate purpose is promotive of the general purposes of the town corporation.

For these reasons the petition should be dismissed, and the temporary restraining order heretofore granted herein should be revoked.

The judgment of this Court to this effect has already been rendered.

Mr. Justice Gary *concurring.* I concur in the opinion of Mr. Justice Jones for the following reasons: The allegations of the amended petition (which are not denied) show that the issuance of the bonds is for a *public* purpose. It is reasonably to be expected that the erection of a school house will be of benefit to the municipality, and while the question whether the erection of a school house by this municipality is a *corporate* purpose is not free from doubt, nevertheless the constitutionality of the act should be sustained, unless it

should clearly appear beyond all reasonable doubt that the act contravened the provisions of the Constitution.