## 11463

### BATTLE *ET AL.* v. WILLCOX *ET AL.*

#### (122 S. E., 516)

1. CONSTITUTIONAL LAW—PRESUMPTION IN FAVOR OF CONSTITUTIONALITY OF ACT.—Every presumption is in favor of the constitutionality of an act, and invalidity must appear beyond a reasonable doubt.

   TOWNS—ACT AUTHORIZING TOWN TO ISSUE BONDS FOR HOSPITAL HELD FOR "CORPORATE PURPOSE."—Act March 26, 1923 (33 St. at Large, p. 758), authorizing Marion County Commissioners to issue and sell bonds for Reaves Township for the establishment of a hospital, *held* to confer a power which was for a "corporate purpose" within Const. 1895, Art. 10, § 5, though the legislature has not provided a township government, in view of Article 7, §§ 9, 11.

3. TOWNS—LEGISLATURE EMPOWERED TO AUTHORIZE TOWNSHIP TO DISCHARGE GOVERNMENTAL FUNCTION.—The legislature has power to make special provision for discharge, by a township in any county, of such particular governmental function or functions as it may think proper

4. TOWNS—CORPORATE PURPOSE OF TOWN IS TO DISCHARGE GOVERNMENTAL FUNCTIONS COMMITTED TO IT BY LEGISLATURE.—The corporate purpose of a town is to discharge such governmental functions as may be committed to it by the legislature in an effort to promote prosperity, safety, convenience, health, and the common good of its inhabitants.

5. TAXATION—HOSPITAL IS WITHIN GOVERNMENTAL POWER TO TAX FOR "PUBLIC PURPOSE."—A hospital is such an institution or utility as directly subserves a public use within the meaning of a governmental power to tax for a "public purpose."

6. CONSTITUTIONAL LAW—STATE MAY DO THROUGH GOVERNMENTAL AGENCY WHAT IT MAY DO DIRECTLY.—What the state may directly do in furtherance of treatment of diseases and afflictions a subordinate governmental agency clothed with delegated power from the State may also lawfully perform.

7. TOWNS—HOSPITAL HELD A "PUBLIC BUILDING" FOR WHICH BONDS MAY BE ISSUED.—A proposed hospital for which Reaves Township was authorized by Act March 26, 1923 (33 St. at Large, p. 758), to issue bonds, and which was to be under the control of public officers, is such. a "public building" as was intended to be excepted

---

Note: The question as to what constitutes "public purposes" under Constitutions and Statutes exempting property from taxation, see note in L. R. A. 1915A, 1122.

from Const. 1895, Art. 10, § 6, limiting the power of the legislature to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build or repair public roads, buildings, etc.

8. STATUTES—ACT AUTHORIZING TOWNSHIP TO ISSUE BONDS FOR HOSPITAL NOT ATTEMPT TO CREATE HOSPITAL BY SPECIAL LAW.—Act March 26, 1923 (33 St. at Large, p. 758), authorizing Marion County Commissioners to issue and sell bonds for Reaves Township for the establishment of a hospital, which was to be under the control of stated public officers, *held* not an attempt to incorporate and create a hospital by special law, in violation of Const. 1895, Art. 3, § 34, subd. 3.

Before SHIPP, J., Marion, August, 1923.   Affirmed.

*Messrs. Gibson & Muller,* for appellants, cite: *No township purpose shown:* 30 S. C., 12; 49 S. C., 535; 103 U. S., 256. *Hospital is not public building; Black's Law Dictionary:* 34 N. J. Law, 383; 41 Pa., 270. *What is a corporation:* 14 Cyc., 49; 14 C. J., 108; Angell & Ames Corp., Sec. 72, 78; 69 Am. Dec., 501; 7 Ark. 57; 10 Wall 566.

*Messrs. Lide & McCandlish* and *W. B. Norton,* for respondent, cite: *Building promotes public purpose:* 5 S. C., 879; 12 A. S. R., 152; 115 S. E., 596. *Township is a body politic:* 99 S. E., 342; 89 S. C., 545. *What is public purpose:* 101 S. C., 312; 103 U. S., 256. *Acts of Legislature presumed to be valid:* 106 S. E., 353; 105 S. C., 638; 103 S. C., 1.

April 15, 1924.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The General Assembly, by an act approved March 26, 1923 (33 Stat. at Large, 758), authorized and empowered the board of County Commissioners of Marion County to issue and sell bonds "for and on behalf of Reaves Township of said county, * * * for the purpose of purchasing a site, erecting and equipping a hospital in said township to be located at Mullins, South Carolina," etc. For the purpose of carrying out the provisions of the act certain designated persons are constituted a hospital com-

mission, vacancies in which commission are to be filled by appointment of the Governor "from the qualified electors of Reaves Township, upon the recommendation of the majority of the legislative delegation from said county." The act confers upon this commission authority to purchase a site and erect and equip the hospital, and vests it "with the direction and management of all affairs pertaining to said hospital. Provision is made for the holding of an election for the purpose of submitting to the qualified electors of Reaves Township the question of whether the bonds thus authorized should be issued.

At an election duly held pursuant to the terms of the act it appears that a large majority of the votes were cast in favor of the issuance of the bonds. Thereupon the plaintiffs, residents and taxpayers of Reaves Township brought this action to enjoin the issuance and sale of the bonds upon the ground that the act of March 26, 1923, above referred to, is unconstitutional. From a decree of Judge Shipp sustaining the validity of the statute, refusing the injunction, and dismissing the complaint, the plaintiffs appeal.

The consttutionality of the act is questioned upon three grounds. These questions, which will be considered in the order presented by counsel, are to be resolved in the light of the familiar and well-settled general rule that every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and that Courts "should not declare a statute unconstitutional unless the invalidity is manifest beyond a reasonable doubt." *State v. Hammond,* 66 S. C., 219, 227; 44 S .E., 797; 800. *Massey v. Glenn,* 106 S. C., 53; 90 S. E., 321. *City of Columbia v. Smith,* 105 S. C., 348; 89 S. E., 1028. *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421.

1. Appellants' first contention is that the act is in contravention of Section 5 of Article 10 of the Constitution of 1895, in that the bonds are not sought to be issued for a corporate purpose. It is argued that,

while townships are by express constitutional provision
(Article 7, § 11) constituted bodies politic and corporate,
for which the "General Assembly may provide such sys-
tem of township government as it shall think proper," the
General Assembly has never provided such system of town-
ship government, and that in the absence of affirmative
legislative action to that end, prescribing the specific powers
and defining the corporate purposes of townships the erec-
tion and operation of a hospital may not be pronounced a
corporate purpose within the meaning of Section 5, Art.
10, authorizing the assessment and collection of "taxes for
corporate purposes." To sustain that view appellants rely
largely upon the decisions of this Court in *Floyd v. Perrin,*
30 S. C., 1; 8 S. E., 14; 2 L. R. A., 242. *Whitesides v.
Neely,* 30 S. C., 31; 8 S. E., 27, and *Construction Co. v.
Township,* 49 S. C., 535; 27 S. E., 570. In those cases this
Court pronounced unconstitutional certain acts of the Gen-
eral Assembly, passed prior to the adoption of the Con-
stitution of 1895, declaring certain townships bodies politic
and corporate, authorizing them to subscribe to the stock
of a railroad company, and providing for the payment of
the subscription by taxation, upon the ground that sub-
scription to the stock of a railroad was not a "corporate
purpose" of a township. Prior to the adoption of the Con-
stitution of 1895 the corporate existence and character of
townships were wholly referable to and dependent upon
such legislative provision therefor as might be made by
the General Assembly. The decisions in the foregoing
cases turned upon the view that there had been no such
legislative declaration of the purposes and objects for which
the townships had been erected into corporations as would
justify the Court in holding that a subscription to the stock
of a railroad company was a corporate purpose for which
taxes could be lawfully levied. As was said by Mr. Justice
Jones in *Allen v. Adams,* 66 S. C., at page 356; 44 S. E.,
938, 942, referring to the ground upon which *Floyd v.
Perrin* was decided:

33—S. C. R., 128.

"The point of invalidity was found in the nondescript character of the township corporation, which had not been created for any purpose whatever except the issuance of the bonds."

Without pausing fully to review and analyze those decisions, we are of the opinion that the provisions of the Constitution of 1895 relating to townships must be held sufficiently to have supplied that element of "corporate purpose" upon the absence of which those decisions were predicated.

In *Gallishaw v. Jackson,* 99 S. C., at page 348; 83 S. E., 454; 456, this Court said:

"A township is a body politic under the Constitution (Article 7, § 11); it is a division of the county, made for governmental purposes."

In the same language that counties are erected into bodies "politic and corporate" (Article 7, § 9), townships are also constituted bodies "politic and corporate" (Article 7, § 11). The corporate purposes of the county as such are not expressly defined and set forth either by the Constitution or by statute. That the object or purpose of constituting townships bodies politic and corporate is essentially identical in character with that contemplated in making counties bodies politic and corporate would seem to be obvious. That corporate purpose, broadly speaking, is the object sought to be attained by the creation of all subordinate governmental agencies or municipal corporations, viz., the promotion of the public good through the exercise by these agencies or bodies politic of such powers as may be delegated to them by competent authority. Hence we can see no necessity for any express declaration or definition by the General Assembly, either by general law or in a special act conferring a particular power, of the corporate purpose or purposes a township is intended to promote. That purpose is sufficiently disclosed by the nature of the entity created by the Constitution and by the character of any power con-

sonant with a legitimate governmental object, conferred by the General Assembly.

It is true the corporate purpose of a governmental agency may be limited, either expressly or by clear implication, to a special field of public service or to the promotion of a particular object. Of that class, for example, are school districts, drainage districts, etc. Thus it has been held that a tax levied by a school district or township to pay for a subscription to a railroad was invalid because it was not for a corporate purpose, that is, not germane to the "school purposes" for which the corporation was created. *Weightman v. Clark,* 103 U. S., 256; 26 L. Ed., 392. And so, if a drainage district should attempt to levy taxes to build a schoolhouse, it is quite apparent that the tax levied might be invalid because not for a corporate purpose. But under our Constitution the only delimitation upon the corporate purpose of a township as a subordinate governmental agency is that embraced in the limitation as to territory. As a subdivision of the county, erected into a body corporate for governmental purposes, the corporate purpose of the township is to carry into effect the principle of local self-government, to the extent the Legislature may authorize, by performing such functions and promoting such objects of local public interest as are of immediate concern to the people within the territorial limits of the particular township. To that end the Constitution (Section 11, Art. 7) vests the General Assembly with discretionary power to "provide such system of township government as it shall think proper in any and all the counties," and further expressly declares in that connection that it "may make special provision for municipal government." The power of the General Assembly to make "special provision" for the discharge by a township "in any county" of such particular governmental function or functions as it may think proper to commit to such township is, we think, not open to serious question. See *Grocery Co. v. Burnet,* 61 S. C., 213; 39 S. E., 381; 58 L. R. A.,

687. *Carroll v. York,* 109 S. C., 1; 95 S. E., 121. *Askew v. Smith* (S. C.), 119 S. E., 379. The corporate purpose of the township, therefore, is to discharge such governmental functions as may be committed to it by the General Assembly in an effort to promote the prosperity, safety, convenience, health, and common good of its inhabitants. See *Brown v. County of Hertford,* 100 N. C., 92; 5 S. E., 178. It follows that, if the erection and maintenance of a hospital is a function of that character, the power conferred by the General Assembly upon Reaves township was a power granted for a corporate purpose.

We do not understand that it is contended in this connection that the erection and maintenance of a hospital is not a legitimate function of government, or that an enterprise of that character may not properly be held to subserve a public purpose within the meaning of the right to tax. That, in the light of modern knowledge as to the intimate relation of the public health to the public welfare, whether regarded from a social, economic, or moral standpoint, a hospital is such an institution or utility as directly subserves a public use within the meaning of the governmental power to tax for a public purpose, is, as we apprehend, not open to serious question. 26 R. C. L., 48; 49, § 32; 19 R. C. L., 716, § 25. Our state government has for many years maintained at public expense hospitals and similar institutions for the care and treatment of patients afflicted with diseases and infirmities, both physical and mental. What the state may directly do in furtherance of such objects the subordinate governmental agency or municipal corporation, clothed with a delegated power from the state, may also lawfully perform. *Baltimore v. Fairfield Improv. Co.,* 87 Md., 352; 39 Atl. 1081; 40 L. R. A., 494; 67 Am. St. Rep., 344. Since the corporate purpose of a township, as we have seen, is primarily to perform such governmental functions as may be committed to it by the General Assembly, in delegating to Reaves Township the power to erect and maintain a public hospital we are clearly

of the opinion that the General Assembly conferred a power which was for a corporate purpose within the meaning of Section 5, Art. 10, of the Constitution. See *Verner v. Muller,* 89 S. C., 545; 72 S. E., 393. *Fripp v. Coburn,* 101 S. C., 312; 85 S. E., 774.

2. Appellants' second contention is that the act is in contravention of Section 6, Art. 10, of the Constitution, in that the hospital building in question is not such a public building as is contemplated by that section, and hence that the Legislature had no authority to empower the township to issue bonds for that purpose. The constitutional provision here invoked is a limitation upon the power of the General Assembly "to authorze any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges," etc. The learned Circuit Judge held that the term "public buildings," within the purview of this section of the Constitution, "should be taken to include such buildings as may be fairly deemed to promote a public purpose," citing in support of that conclusion the California case of *Yole v. Barney,* 79 Cal., 375; 21 Pac., 833; 12 Am. St. Rep., 152, in which "a hospital is specifically designated as a public building." If, as we have concluded in the consideration of appellants' first contention, the erection and maintenance of a hospital may be lawfully undertaken by the township as a governmental function, under a plenary grant of power from the General Assembly, it would seem clear that the building essential to the discharge of that function would be, as the Circuit Judge correctly held, a public building in the sense that it would promote a public purpose or subserve a public use.

But the building here in question may be classified as a public building from another viewpoint. The bonds are to be issued "for and on behalf of Reaves Township," and the control and management of the hospital are vested in public officers holding office for limited terms, whose successors are to be chosen from the qualified electors of the .

township, and appointed, as many of the officers of governmental subdivisions of the state are appointed, by the Governor upon recommendation of the legislative delegation of the county. By necessary implication, we think, the act vests the title of the hospital building in Reaves Township as a body politic and corporate for the public use, and devolves its control and management upon public officers who are officials of the township. It may, therefore, fairly be deemed a public building within the meaning of the terms "public ownership," "public control," and "public use." In view of the foregoing considerations we do not think it may soundly be held that the proposed hospital is not such a public building as was intended to be excepted from the limitation imposed by Section 6 of Article 10 of the Constitution.

3. The third proposition advanced by appellants is that the act is in contravention of subdivision 3, § 34, of Article 3 of the Constitution, "in that the same is in effect an attempt to incorporate and create a hospital by special law." The views stated in disposing of appellants' first and second contentions render unnecessary any extended discussion of this proposition. The act merely confers certain powers upon an existing body politic and corporate, and vests the administration of those powers in a commission composed, as above noted, of officers who are officials of the public corporation, the township. In no sense that we can perceive is there an attempt, directly or indirectly, to erect the hospital commission into a separate and distinct corporate entity.

The exceptions are overruled, and the decree of the Circuit Court affirmed.

MESSRS. JUSTICES WATTS and COTHRAN concur.

MR. JUSTICE FRASIER: I dissent. There are private hospitals and public hospitals. It seems to me that the act under which these bonds are to issue should contain some provision that will insure a public use, and this act has no such provision. It is true the hospital may be under the

management of public officers, but this act does not give to the public any rights in the hospital. A man who can afford to pay the price may find it very convenient to have a hospital near him, but if the hospital will take only pay patients the hospital will be of no service to those who cannot afford to pay even a reasonable price for the services desired. It may be that the management will make some provision for the treatment of those who cannot pay. A public institution should give the public a right to its use, and not a mere privilege given by its kind-hearted officials. The third section provides:

"Said commissioners may by contract or lease transfer the said hospital to other parties on such terms and for such number of years as to them may be for the best interest of the community and said hospital."

It is thus seen that the hospital may at once be converted into a private hospital, and be entirely free from the management of the public officials.

For these reasons I dissent.