REQUESTED BY: F. A. Gossett III, Dodge County Attorney, Fremont, Nebraska.
Notwithstanding Opinion No. 266, Report of Attorney General, 1975-1976, is it conceivable that a lawful arrangement might be made whereby office space within a county hospital building would be leased to private medical doctors for the purpose of conducting private practice?
Yes, if the primary objective is to serve a public need or use, as compared with the incidental private gain or benefit to the individual doctors.
In our Opinion No. 266, now appearing in Report of Attorney General, 1975-1976, at page 393, we expressed the view that there is no authority whereby office space in a county community hospital may be leased to medical doctors for the purpose of carrying on a private practice therein. We adhere to that opinion, in the narrow factual context which was envisioned at the time the opinion was issued that is to say, where the office space would be used by the lessees for the sole and only purpose of conducting a private practice and with there being no particular standards of guidelines as to selection of the lessees and without any defined obligations or responsibilities on the part of the lessee doctors calculated to contribute to the efficiency of the hospital, in particular, and to the medical welfare of the community, in general.
In reaching our initial conclusion in Opinion No. 266, we called attention to both statutory and constitutional possible obstacles. For one thing, we referred to the provision contained in section 23-343.03, R.R.S. 1943, which authorizes the county hospital board to lease the facilities and equipment therein, for the total operation and management of the hospital, to a charitable nonprofit organization. We reasoned that such an express provision negated the existence of any power to lease anything less than the entire hospital facilities as an operating entity. Further consideration of the background and legislative history of that statutory provision causes us to question whether the familiar maxim, `expressio unius est exclusio alterius' is controlling. We find no Nebraska decision wherein that doctrine has been applied in a lease situation; and it appears to present a very close question. Although it is pure speculation, our inclination is to believe that the court would not adopt the position that the statutory language, standing alone, forecloses all possibility of the lease of office space in a county hospital. An even more serious obstacle, and what we considered in Opinion No. 266 as the controlling issue, and as we continue to view it, relates to the application and effect of Article XIII, section 3, of the Constitution of Nebraska.
Since the issuance of our earlier opinion, the matter has been the subject of continuing study and consideration both by this office and by local officials dealing with the immediate question; and this has resulted in a recognition of the desirability of exploring somewhat the possible existence of conditions and terms which might tend to satisfy constitutional requirements.
We can proceed from a basic assumption that Article XIII, section 3, would not permit an ordinary landlord and tenant relationship where the only possible public benefit would be to increase the medical doctor population of the community. From that starting point, various additional factors are conceivable which might alter the constitutional stature of any given lease arrangement. Among such factors might be the following: (1) Space presently is unneeded for hospital purposes and is available for adaptation to and use as medical offices. (2) Rentals would be established at a commensurate figure and on a temporary short-term basis, thereby avoiding the evolvement of unjust vested interest situations. (3) Existence of a policy for leasing, or at least preferring, particular doctors whose presence would contribute significantly to the medical welfare of the community by reason of special training or experience, or otherwise. (4) Lessee-doctors, when present in the building, could be appropriately available for assistance in case of emergencies. (5)
Lessee-doctors could render special services for the hospital by way of matters such as instructing personnel and assisting in continuing education type activities.
Article XIII, section 3, of course, is the constitutional prohibition against using the `credit of the state' for the benefit of any private individual. However, not all private benefit, ipso facto, results in a violation of the Constitution. Situations will arise, as here, where it is necessary to balance public use against private benefit; and in such cases if the private benefit, although quite substantial, is incidental as compared with a dominant public use or purpose the Constitution is not considered as being offended against.
Hereinbefore we have suggested certain factors which, if reflected in the policy and terms pursuant to which a lease is effectuated, would weigh on the side of constitutional acceptability. It cannot be stated categorically how many, and to what extent, such factors must exist in order to support a conclusion that a proposed lease serves a legitimate public need or use and is of such a nature and extent so as to render the private benefit comparatively incidental. In Burger v. City of Beatrice, infra, the court noted that the term `public use' is not capable of precise definition and is one which necessarily is elastic and keeps pace with changing conditions. It was also observed in the dissenting opinion in that case that public versus private use questions present `one of the most controversial and conflicting areas of the law.' Where and how to draw the line is something which calls for extraordinary insight and wisdom.
Unquestionably, there is an element of private benefit for a medical doctor the have private office space within a county hospital; and, by the same token, the general health, safety and welfare of the community may well be promoted thereby. In the final analysis, the resolution of the question simply rests upon a comparison and weighing of the private versus public use or benefit factors which may be identifiably present in the terms, conditions and reasonably calculated results of the particular lease arrangement under consideration. This calls for a factual judgment, as well as policy determination, which must and can be made only by the governing body of the hospital. In most situations, the question will be sufficiently close as to leave room for honest and legally responsible difference of opinion as to what constitutional interpretation should prevail.
We have studied a great number of decisions from the general reporter system, even a brief summary of which would unduly extend this writing. However, it may be of some service to those who must make a judgment with reference to some specific proposal that we cite some of the leading cases on the subject which have reached the Nebraska Supreme Court. Chase v. County of Douglas, 195 Neb. 838,241 N.W.2d 334; State ex rel. Beck v. City of York, 164 Neb. 223,82 N.W.2d 269; Lindburg v. Bennett, 117 Neb. 66,219 N.W. 851 (1928); Omaha Parking Authority v. City of Omaha,163 Neb. 97, 77 N.W.2d 862; Burger v. City of Beatrice,181 Neb. 213, 147 N.W.2d 784; and Consentino v. City ofOmaha, 186 Neb. 407, 183 N.W.2d 475. Also see, Report of Attorney General, 1957-1958, No. 194, p. 326.
From a factual point of view, probably the most nearly in point case we have come upon is Gilbert v. Bath (S.C.),227 S.E.2d 177. That case specifically involved the subletting of space within a community hospital; and some of the reasoning in the opinion may have some applicability to the present subject.