15460

SMOAK v. RHODES *ET AL.*

(22 S. E. (2d), 685)

*Mr. J. Carl Kearse,* of Bamberg, *Messrs. Watkins & Prince,* of Anderson, and *Mr. D. McK. Winter,* of Columbia, counsel for petitioner,

Supplemental brief of petitioner.

*Mr. George Warren,* of Hampton, and *Mr. Heber R. Padgett,* of Walterboro, were counsel for respondent, Osborne H. Rhodes.

November 5, 1942.

Circuit Judge E. H. HENDERSON, Acting Associate Justice, delivered the opinion of the Court:

A primary election of the Democratic party was held in Colleton County on August 25, 1942, for the purpose, among other things, of choosing a nominee for the office of Judge of Probate. This officer also acts as Master. Of the three candidates for this nomination, S. N. Haws was eliminated, and the petitioner, I. A. Smoak, and the respondent, Osborne H. Rhodes, were the contestants in the second primary which was held on September 8, 1942. In that primary, counting all of the ballots cast in the county, Rhodes received eighteen hundred one (1,801) votes and Smoak received seventeen hundred eighty-one (1,781).

One of the precincts was located at the town of Jacksonboro and at that box fifty-two (52) ballots were cast, of which Rhodes received fifty (50) and Smoak two (2).

The ballots used at this polling place in the second primary were those left over from the first primary election. At the close of the meeting held by the County Executive Committee on August 27, 1942, for the purpose of declaring the result of the first primary, the club executive committeemen were instructed to take the boxes back with them, in order to save the expense of another trip to Walterboro. The Jacksonboro committeeman did take the box of his precinct with him, and in it there were quite a number of unused first primary ballots. There is uncertainty as to whether the committeeman was expected to come back to Walterboro to get the second primary ballots, or whether it was understood that when they were printed they would be mailed to him by the secretary of the county committee. At any rate no second primary ballots were sent to Jacksonboro, or placed in the hands of the club officials, and the only ones which were at any time received from the county committee at this precinct were the first primary ballots.

Before the County Executive Committee, Mr. Smoak protested the counting of the Jacksonboro ballots.

There were cast in the voting in various county boxes one hundred eighty-two (182) absentee ballots which were

challenged by Mr. Rhodes and kept separate. These consisted of one hundred seventy-two (172) votes for Smoak and ten (10) for Rhodes. The respondent, Rhodes, objected before the county committee to the counting of these ballots.

After a hearing that committee held that the Jacksonboro box should be thrown out, and that the absentee ballots should be counted. As a result Mr. Smoak was declared to be the nominee of the party by a vote of seventeen hundred seventy-nine (1,779) to seventeen hundred fifty-one (1,751).

An appeal was thereupon taken by Rhodes to the State Democratic Executive Committee. Upon hearing the appeal, the state committee decided that the Jacksonboro votes should be counted, and that the absentee ballots should be excluded. The action of the county committee was reversed and Mr. Rhodes was declared to be the nominee of the party for Judge of Probate by a vote of seventeen hundred ninety-one (1,791) to sixteen hundred nine (1,609).

This is a proceeding in the original jurisdiction of the Court, under a writ of *certiorari,* to review the action and decision of the State Executive Committee. The contention of the petitioner, Mr. Smoak, is that the Jacksonboro votes should have been excluded on the grounds that the ballots used were not those prescribed by statute and by the rules of the party, that the ballots were not folded, and that the names of the voters were not checked off the club roll to indicate who had voted and who had not voted at the polls; and on the ground that the absentee ballots should have been counted.

Legal principles governing primary elections are well settled and have been announced in many opinions of this Court.

> "Errors which do not appear to have affected the result will not be allowed to overturn an election, and every reasonable presumption will be indulged to sustain it." *Hyde v. Logan,* 113 S. C., 64, 101 S. E., 41, 44.

In the same case it is said that the right to vote is a substantial right.

"The rules of the primary elections (part in the rules of the party and part in the statutes) are elaborate and minute in detail, and comprise regulations for the size of the booths, the length of the curtain that screens the booth, the distance of the rail from the ballot box, etc. It will not be contended that a few inches one way or the other in these matters would vitiate an election. If these rules and regulations are held to be mandatory, and a variation from any one of them fatal to an election, it would be almost impossible to hold a valid election. They must be held to be directory, and in order for a failure to comply with them to be fatal it must be shown that the error was prejudicial or liable to produce prejudice. We have seen that there is nothing in the record to show that the secrecy of the ballot was impaired.

"There is in this case no question of want of good faith or fraud. The objection is to what, in this case, is a mere technical violation of the law." *Killingsworth v. State Committee,* 125 S. C., 487, 118 S. E., 822, 824.

See also, *Brockman v. Barry,* 195 S. C., 199, 11 S. E. (2d), 137.

Taking up, first, the question of the use of the first primary ballots, we find that Section 2365 of the Code, later amended in other particulars, provides in part: "Each voter shall deposit in the appropriate box a ballot on which shall be printed the names of the candidates for the office to be filled, with the titles of the respective offices. The tickets shall be furnished by the state committee for all except county officers, congressmen and solicitors, for which the county committee shall furnish the tickets. Each ticket shall contain the names of all candidates for the respective offices and no other tickets shall be used."

This is also included in Rule 33 of the Democratic party.

In the present case there is no suggestion whatsoever of fraud at the Jacksonboro box. It was, of course, an irregularity for the managers to use the first primary ballots rather than ballots of the second primary, but in our opinion it was not such an irregularity as would invalidate the Jacksonboro votes. The fact that the first primary ballots were used in no way prejudiced the rights of any voter for the office of Judge of Probate, or interfered with a free expression of the will of those desiring to cast their ballots at this precinct. All of the ballots were exactly alike except for the numbers on the coupons. They were all of the same size and shape, and the same color; and had identically the same printed matter on them. There was no distinction whatever between one ballot and another. None of the ballots had any markings or mutilations whatsoever, they were official party tickets, and were in fact the only ballots furnished this precinct by the county committee. Each voter was informed that Mr. Haws had been eliminated, and the fact that he received no votes makes it very clear that the presence of his name on the ticket was in no way confusing. Despite the fact that there were other names on the ticket for other offices, the ballots themselves show that the voters exercised a free choice as between Smoak and Rhodes. We think that there has been no unfairness to either candidate, and that the voters at this precinct should not be denied the right of taking part in the primary because of this departure of the election officials, in good faith, from the strict letter of the law.

The petitioner, Mr. Smoak, lays stress upon the words "no other tickets shall be used," and cites the case of *Ex parte Riggs*, 52 S. C., 298, 29 S. E., 645, 646.

The *Riggs case* construed a statute relating to the general election, Section 169 of the Revised Statutes, a part of which is now incorporated in amended form in Section 2304 of the Code. This statute provided that ballots shall be "with-

out ornament, designation, mutilation, symbol, or mark of any kind whatsoever, except the name or names of the person or persons voted for, and the office to which such person or persons were intended to be chosen;" and it also provided in the same sentence that "no ballot of any other description found in any election box shall be counted." The defects in the ballots are not stated, but from the opinion of the Court it is evident that there was on these ballots some ornament, designation, mutilation, symbol or mark, and so they were held to be illegal.

Section 2365 of the Code is an entirely different statute, relating to primary elections. In it the words "no other tickets shall be used" appear in a sentence which provides that "Each ticket shall contain the names of all candidates for the respective offices and no other tickets shall be used." That provision, as it relates to this office, was substantially complied with at the Jacksonboro box. The tickets did contain the names of Smoak and Rhodes for the office of Judge of Probate. No ticket omitted either name.

If the words "no other tickets shall be used" refer as well to other sentences of this paragraph in the statute, quoted above, it appears that the ballots used at Jacksonboro did have printed on them the names of the candidates for this office with the title of the office; and that they were furnished by the county committee. The essential requirements of the statute were in fact substantially met, in spite of the irregularity.

Turning now to the question of the folding of the ballots, prescribed by Section 2376 of the Code and party Rule 46, sub-division 4, we think that there is nothing before us to show that they were not folded or that the secrecy of the ballot was violated.

"It is well settled that the findings of fact of an inferior court or body will not be reviewed by this court, on writ of *certiorari*, unless such findings are entirely without support in the evidence." *McKnight v. Smith*, 182 S. C., 378, 189 S. E., 361, 362.

"Our review of the action of the State Democratic Executive Committee must be confined to the correction of errors of law only, and does not extend to the findings of fact, except when the findings of fact are wholly unsupported by evidence." *Young v. Sapp,* 167 S. C., 364, 166 S. E., 354, 356.

See also, *May v. Wilson,* 199 S. C., 354, 19 S. E. (2d), 467.

The state committee, in its resolution declaring Rhodes the nominee and reversing the action of the county committee, did not go into details as to its findings of fact. It is certain that it did not make a finding that the ballots had not been folded. On the contrary, it seems to us that the committee has, in effect, found as a fact that the secrecy of the ballot was preserved. The original ballots were before the Court. They were also before the state committee. It may be assumed that the committee examined them with care to see whether or not they were creased, or otherwise showed signs of having been folded, as that was one of the issues of fact before it. After this inspection, and after considering the affidavit of H. M. Tuten, the Jacksonboro committeeman, and other evidence, the committee held the ballots to be valid. We think that there was ample evidence to support such a finding. There was not the least particle of evidence that the printed portion of the ballots was revealed to any one.

As to the objection that the names of the voters were not checked off the club roll to indicate who had voted and who had not voted at the polls, we understand the contention of the petitioner to be that the managers should have made a check mark on the club roll itself, opposite the name of each person as he voted.

There is no provision either in the statute or in the rules of the party requiring that to be done. The names of the voters are to be entered on the poll list

by one of the managers. There is no suggestion that the managers failed to have the original club roll with them at the polls, or that they allowed any person to vote whose name did not appear on such roll. Section 2359 of the Code, and Rule 11 of the Democratic party.

Nor is there any contention by the petitioner that the managers failed to keep the poll list correctly, or that they neglected to "enter the number of the ballot next the name of the voter," as is required by Section 2376 of the Code and by Rule 46, sub-division 4, of the party.

In our opinion the state committee correctly decided that the ballots at the Jacksonboro box should be counted.

In view of this holding it will be altogether unnecessary for us to consider the question of the one hundred eighty-two (182) absentee ballots. Even if all of them are counted this would not change the result, since Rhodes would still have eighteen hundred one (1,801) votes and Smoak seventeen hundred eighty-one (1,781).

After the hearing before us in the proceeding, as the time for the holding of the general election was drawing near, the Court by an order dated October 17, 1942, announced its decision, and stated that an opinion giving our reasons and citing the applicable law would be filed in due time.

That order operated as a final determination of the case, and declared that "it is the judgment of this Court that the writ of *certiorari* heretofore issued be, and hereby is quashed, the restraining order dissolved, and the judgment of the State Executive Committee be affirmed."

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.