16883

BOLT *ET AL.* v. COBB *ET AL.*
(82 S. E. (2d) 789)

*C. S. Bowen, Esq.,* of Greenville, *for Appellants,*

*Messrs. E. Harry Agnes,* of Anderson, *for Respondents, Commissioners of Election and County Board of Commissioners of Anderson County,* and *Watkins, Vandiver & Freeman,* of Anderson, *for Respondent, Anderson County Hospital Association,*

June 23, 1954.

STUKES, Justice.

This action challenges the validity of Act No. 390 of 1953, 48 Stat. 692, and the special election held thereunder. The Act is entitled, "To provide for a special election in Anderson County for the purpose of determining if Anderson County shall issue one million ($1,000,000.00) Dollars of general obligation bonds for hospital facilities, to provide for the issuance and payment of such bonds if such election results favorably, to prescribe the hospital facilities to be acquired with the proceeds of such bonds, and to empower the County Board of Commissioners of Anderson County to make such hospital facilities available for use by the Anderson County Hospital Association."

The preamble recites that Anderson County Hospital Association is an eleemosynary corporation with a membership of the thousands of citizens who have contributed to it, by means of whose gifts it has erected and operates a hospital with two hundred beds and other facilities, which latter are ample to supply the needs of more patients than there are now beds; hospitalization is furnished for many charity cases for which payment is made in part by Anderson County; more bedrooms and wards are necessary to meet the need for hospitalization of the sick of the county, both charity and pay patients. The foregoing recitals are made legislative findings by section 1 of the Act and further that it has been determined by the General Assembly that it is not desirable

or economical to build and operate a separate hospital and the need would be better met by additional facilities, designed to complement and supplement those of the Association, whereupon it was determined to construct a separate building or buildings fashioned to complement the existing facilities or to be used independently thereof. The legislative findings contained in the act are not controverted.

The concluding provisions of Section 1 of the act follow:

"It [the General Assembly] has further determined to permit the County Board of Commissioners of Anderson County (hereafter called County Board) to lease these facilities to the Association for a nominal rental, for a period of time as long as the said County Board shall approve, provided that during such period of time the facilities to be furnished by the County and the existing facilities of the Association shall be made available to the public of Anderson County under such conditions and regulations as the County Board and the Association shall mutually agree upon, and which shall be designated [sic] to permit the greatest possible amount of free service to the residents of Anderson County, unable to pay for such service."

The following constitutes sections 5 and 6 of the act: "If the election shall result favorably, the County Board shall select an appropriate site for a building or buildings, to complement and supplement the hospital facilities now furnished by the Association. Such building or buildings shall be constructed so that it or they may be converted into a separate unit for independent use if this shall afterwards prove necessary, but they may be attached to and connected with the present buildings of the Association by convenient passage ways and connections. The County Board shall be empowered to accept, as an appropriate site for such building or buildings, a lot of land in the City of Anderson, adjoining the present plant of the Association, provided that the deed thereto is in fee simple, and does not require the payment of monetary consideration by the County Board. The County Board shall likewise enter into negotiations

with the Association, for the use, by the Association, of the hospital facilities to be made available through this Act, and shall endeavor to agree with said Association upon conditions and regulations, which would make those facilities, and the existing facilities of the Association, available to the public of Anderson County. Such conditions and regulations shall be promulgated so as to provide for the greatest possible amount of free service to the sick of Anderson County who are unable to pay for the same. The Association need not be required to pay any monetary rental for the use of the hospital facilities made available by this Act, the General Assembly having found that the use of such facilities by the Association, under the conditions prescribed by this Act, discharges functions corporate in nature to Anderson County. * * * When the County Board shall be assured that a proper site is available, and is likewise satisfied that the conditions and regulations agreed to by it and the Association meet the requirements of this Act, it shall so declare by resolution, and the adoption of such resolution shall be conclusive upon all persons. Upon the adoption of such resolution, it shall thereupon be empowered to make provision for the issuance of One Million ($1,000,-000.00) Dollars general obligation Hospital Bonds of Anderson County."

It is seen from the foregoing that the plan of the act is that the county will from the proceeds of the issuance of its bonds construct hospital facilities which may be leased for a nominal rental, for such length of time as the County Board may determine, to a private, although eleemosynary, corporation for operation under such terms and conditions as it and the County Board may agree upon in their mutual interest. The trial record indicates that the county is now dependent on the present hospital, operated by the respondent Association, for the hospitalization of its needy sick. The following is from an audit of the hospital for the calendar year 1952, as it appears in the record:

| | | |
|---|---:|---:|
| Total number of patient days . . | | 73,287 |
| Number paid days . ,. . . . . . . . . . . | 64,534 | |
| Number free days . . . . . . . . . . . . | 8,753 | |
| | | |
| Total . . . . . . . . . . . . . . . . . . . . . . | 73,287 | |
| Cost for caring for free patients | | $114,314.18 |
| Contributed by county . . . . . . ,. . $ | 36,391.00 | |
| Contributed by State . . . . . . . . . . | 31,922.00 | |
| Contributed by others . . . . . . . . | 207.07 | |
| Loss to Hospital Asso. . . . . . . . . | 37,035.89 | |
| | | |
| Total . . . . . . ,. . . . . . . . . . . . . . . . $114,314.18 (sic) | | |

The election was duly held pursuant to the terms of the act and resulted in a majority favorable to the issuance of the bonds. The appellants thereafter brought this action to enjoin the issuance of the bonds and the other execution of the terms of the act. From adverse judgment they appeal. Their contentions are threefold: First, that the act violates sections 5 and 6 of Article X of the Constitution of 1895; and, second, the published notice of election was fatally defective, as (third) was the form of the ballot which was provided and used at the election.

The constitutional question will be first considered. Article X, § 5, of the constitution provides that the corporate authorities of counties may be vested with power to assess and collect taxes for corporate purposes. Section 6 is in part as follows: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, County officers, and for litigation, quarantine and court expenses and for ordinary County purposes, to support paupers, and pay past indebtedness."

The erection, maintenance and operation of hospitals by the State and its subdivisions has long been an approved and common activity. *Battle v. Willcox*,

128 S. C. 500, 122 S. E. 516; *Law v. City of Spartanburg,* 148 S. C. 229, 146 S. E. 12; *Crouch v. Benet,* 198 S. C. 185, 17 S. E. (2d) 320; *Smith v. Robertson,* 210 S. C. 99, 41 S. E. (2d) 631; *McLure v. McElroy,* 211 S. C. 106, 44 S. E. (2d) 101; *Bradley v. City Council of Greenville,* 212 S. C. 389, 46 S. E. (2d) 291; and *Parker v. Bates,* 216 S. C. 52, 56 S. E. (2d) 723. A hospital was referred to in *Bradley v. City Council, supra,* [212 S. C. 389, 46 S. E. (2d) 295], as "a needed public facility." Also see articles 2 *et seq.* of Chapter 4 of Title 32 of the Code of 1952.

The leading case of *Battle v. Willcox, supra,* is conclusive against the appellants in this case upon both constitutional grounds which they invoke. Both were unsuccessfully invoked there. Specifically, appellants point to the authorization of the Anderson County Board of Commissioners to lease the projected hospital building to Anderson County Hospital Association as unconstitutional because it would convert, it is contended, the property to a private rather than a public purpose. However, the same feature was in the *Battle case* and was vainly urged upon appeal. The act in that case was No. 436 of 1923, 33 Stat. 758. Section 4 of it provided as follows: "When said hospital is completed and ready for use the said commission herein appointed shall have the authority, and they are hereby, authorized to contract with some reliable person or persons, firm or corporation, for the operation of said hospital, either by lease or otherwise * * *." The last proviso of the preceding section 3 of the act follows: "Said commissioners may, by contract or lease, transfer the said hospital to other parties on such terms and for such number of years as to them may be for the best interest of the community and said hospital."

In order to assure ourselves that the law of the cited case is *stare decisis* in this, we have referred to the original transcript of record for appeal and the briefs in it and find that the point was put in issue by the first exception; and appellants' brief contained the following with reference to that township hospital: "It is subject to the control of a board,

which is given perpetual succession and which may, by contract or lease, transfer it for a hundred years, if, in its judgment, such is proper. In fact, the township reserves no right or power in handling the institution. * * * No right is reserved to the public. Everything is in the discretion of the board. The very wording of the act shows that is is being built to lease and not as a township proposition, except that it will be located therein." Moreover, the issue was squarely presented to the court by the dissenting opinion of one of the justices.

In the strongly contested case of *Parker v. Bates, supra,* [216 S. C. 52, 56 S. E. (2d) 725] the act which allocated State funds to the counties contained a provision that a county's portion of the funds might be used, quoting, "(f) for any other eleemosynary hospitals in said counties whether or not such hospital is a county or municipal-owned institution." § 1(f), Act No. 344 of 1949, 46 St. at Large 768. The quoted provision was questioned only if it should be held to authorize the payment of public funds to a sectarian hospital, the unconstitutionality of which latter we upheld under Article XI, § 9, of the Constitution. That parallel situation was not attacked, as it has been here.

In this instance Anderson County is providing for the performance of a public, corporate function through the agency of the existing non-profit and non-sectarian hospital, whose room facilities have become inadequate to meet the present need for more beds. It is common knowledge that there are other counties in the State which are without publicly-owned and operated hospitals and they aid other existing hospitals, in one form or another, in order to procure hospitalization for their needy sick. An example is seen in Section 32-822 of the Code entitled, "Tax for care of indigent patients at Camden hospital." Anderson County, itself, is annually appropriating funds to the present hospital, operated by the respondent Association, to compensate it for the care of charity patients. See the County

Supply Act of 1953, § 2, Item J-2 "Anderson County Hospital Charity $36,000.00." 48 Stat. at page 681.

We are so clearly guided and governed in the decision of this case by the precedent of *Battle v. Willcox, supra,* that it is hardly necessary to repeat the ordinarily important rules applicable to such cases—that a legislative act will not be held to be violative of the constitution unless so beyond reasonable doubt, and whether the purpose of a tax is a public one is primarily for the legislature; but see *Cothran v. Mallory,* 211 S. C. 387, 45 S. E. (2d) 599, and authorities there cited.

Appellants' constitutional attack must fail for the reasons stated, and we turn to the other questions.

Section 3 of the act required that the election should be conducted by the Commissioners of Election in accord with the provisions of Title 23 of the 1952 Code (the "South Carolina Election Law") and that the published notice should contain, among other things, the qualification which should be imposed upon persons desirous of voting. In pertinent part the notice was as follows:

"Eligibility to vote shall be determined by the South Carolina Election Law as contained in Chapter 2, Section 23, of the Code of Laws of South Carolina, 1952. All persons desiring to vote shall present a Certificate of Registration issued by the Board of Registration for Anderson County, South Carolina, dated more than thirty (30) days prior to the election date, issued as provided by said Law."

Error is patent in the use of the word "Section" instead of "Title," which latter was properly used in the act. There was no factual showing that anyone was misled by the manifest and inconsequential mistake. Prior to 1952 the decennial codes did not generally use the term "title" which probably explains the mistaken use of the familiar word "section." The qualification for voting was possession and presentation of a proper registration certificate, to which reference was plainly made in the published notice.

Undoubtedly there was more than substantial compliance with the statutory requirement of the contents of the notice, which suffices, certainly in the absence, as here, of any showing of even probable effect of the error. *Phillips v. City of Rock Hill,* 188 S. C. 140, 198 S. E. 604, 119 A. L. R. 656. 18 Am. Jur. 248, Sec. 110, Elections. Annotation, 119 A. L. R. 661. The regrettable absence of interest of voters in bond elections is notorious. In the preceding general election 14,410 votes were cast in Anderson County; in this special bond election in 1953 there were 3,396 votes. The usual lack of interest, which is within common knowledge, explains the difference and it is of no significance. In further explanation the general election referred to was that in which General Eisenhower was elected President of the United States; there were more votes cast in this State in that general election than in any before.

Section 2 of the act stated the question which should be submitted at the election and then provided that it should be followed on the ballot by the words "Yes" and "No," with appropriate instructions that one or the other should be stricken by the voter, depending upon whether he or she favored or opposed the issuance of the bonds. The ballot which was used contained the question verbatim and below were two blank squares or boxes, and opposite one "In favor of the issue," and opposite the other, "Opposed to the issue." Instructions were appended to the effect that a voter in favor of the bond issue as stated in the question should place an "x" in the appropriate box, and those opposed in the other. It does not appear that the ballot and instructions could have been clearer.

The discrepancy between the form of the ballot which was prescribed by the act and that which was actually used is evident from the foregoing. It is explained by the contents of section 23-318 of the Code of 1952 which was followed in the preparation of the ballot. Again, there was no evidence that any voter was misled.

418

Errors which do not appear to have affected the re-
sult will not be allowed to overturn an election, and
every reasonable presumption will be indulged to sus- .
tain it. *Smoak v. Rhodes,* 201 S. C. 237, 22 S. E. (2d) 685.
*Harrell v. City of Columbia,* 216 S. C. 346, 58 S. E. (2d)
91. With particular reference to irregularities in the form of
ballot in such a case as this, see 18 Am. Jur. 298, sec. 180,
Elections, Submission of Propositions, and authorities cited
in the footnotes; and 29 C. J. S., Elections, § 173 a (2), p.
251, Submission of questions or propositions.

The defects in the published notice of the election and in
the form of the ballot were not substantial, could not have
affected the result and, therefore, did not invalidate the elec-
tion, by which issuance of the bonds was authorized. We
therefore conclude that appellants' contention thereabout are
without merit and should be overruled.

Because it may at least partially allay the fears of
appellants, we add the observation that when con-
structed the hospital will be the property of Anderson
County and upon the Board of County Commissioners will
fall the heavy duty and responsibility of dealing with it ac-
cording to law and to the best interests of the people of the
county. It cannot be presumed that the Board will act other-
wise.

The exceptions are overruled and the judgment affirmed.

TAYLOR, OXNER and LEGGE, JJ., concur.