## 20221

Frank GILBERT, as a citizen and taxpayer of Florence County, Petitioner-Plaintiff, v. D. M. BATH et al., Respondents-Defendants.

(227 S. E. (2d) 177)

174

*Kenneth E. Merriman, Esq.,* of Florence, *for Petitioner-Plaintiff,*

*Peter D. Hyman, Esq.,* of Florence, *for Respondents-Defendants,*

*D. Laurence McIntosh, Esq.,* of Florence, *for Respondents-Defendants*

May 24, 1976.

RHODES, Justice.

Pursuant to permission duly granted, this declaratory judgment action was instituted in the original jurisdiction of this Court, by a citizen and taxpayer of Florence County, to determine the validity of a commitment made by the County of Florence to the Pee Dee Regional Health Services District (Pee Dee) to grant it $1,000,000 to be expended in the construction of a new regional hospital to be leased to McLeod Memorial Hospital (McLeod). Plaintiff challenges the validity of the commitment on various State constitutional grounds and further questions the statutory authority of Pee Dee to participate in this project.

The individual defendants comprising the County Council of the County of Florence contend in their answer that there is no constitutional barrier to the commitment made by it. Pee Dee and McLeod by their joint answer allege that they have applied for various funds that are separately available to them to build the proposed hospital facility; that neither of them alone has sufficient funds to carry out the entire proposed project, but that Pee Dee as landlord and McLeod as the owner of a leasehold interest may jointly finance the project with the aggregate of funds separately available to each. They further ask that the commitment of funds by the County of Florence be declared valid. The verified pleadings and stipulated exhibits constitute the record in this case.

For a number of years the Pee Dee region of South Carolina has been interested in procuring a new full service, acute care regional hospital and referral center. This common interest has brought together several units of government and a private eleemosynary hospital corporation in a cooperative effort to achieve this objective. The result of these joint endeavors is a proposed project to construct in the City of Florence a new 300 bed hospital at a cost of $28,441,861 to service the Pee Dee area of South Carolina.

The principal instrument utilized in the plan providing for improved health care for this region of South Carolina is the McLeod Memorial Hospital, which is a non-sectarian and non-profit corporation. McLeod was founded in 1906, and has operated continuously since such time. As the largest hospital in the Pee Dee area of South Carolina, the traditional role of McLeod has been to provide acute general hospital care to the population of this area in co-operation with community hospitals strategically located in the surrounding counties, and to serve as a center where specialized medical and hospital care could be obtained beyond the capability of the medical staffs and the facilities of the other hospitals. The main portion of the building which the hospital now occupies was completed in 1935. The record reflects that there is a great need to replace the facility with a new modern facility to improve health care delivery to the patients in the area. Although McLeod has been governed in the past by an unrestricted self-perpetuating Board of Trustees, it has adopted a resolution to amend its charter so as to provide that six of its seventeen trustees shall be designated as regional members, such members to be elected by the Board of Trustees from nominations submitted by Pee Dee.

The plan designed to bring into fruition the above stated objective is multi-faceted, and a recital in some detail is necessary for an understanding of this case. The City of Florence is committing itself to convey without consideration, by fee simple deed, a 30 acre tract of land in the City to Pee Dee, which is a body politic created by legislative enactment. This tract of land is to be the site of the proposed hospital. Pee Dee then proposes to lease to McLeod the entire tract of land, with the improvements to be erected thereon, for a term of 50 years with an option to renew for an additional term of 50 years. The proposed hospital is to be entirely operated by McLeod and it is to receive all income generated from its operation, subject to numerous terms contained in the lease designed to protect the public interest

and character of the institution. The lease agreement specifically designates the relationship between Pee Dee and McLeod as that of landlord and tenant. Under this arrangement, McLeod will have a leasehold interest of sufficient duration to qualify for an FHA 242 loan from federal funds in the amount of $8,271,200. There is no question but that McLeod is a private eleemosynary corporation, and this status is a requisite for borrowing under the FHA 242 program, such funds being available only to private non-profit corporations. McLeod also has available to it a Hill-Burton Grant in the amount of $815,521 and a Hill-Burton guaranteed loan in the amount of $6,820,661. The availability of these federal loans and the federal grant is conditioned upon the project having $2,534,478 in matching or equity funds. McLeod has on hand cash of $970,872 for a portion of the equity funds needed for the project. Pee Dee has received a grant from the State of South Carolina from health care extension funds in the amount of $563,-606 and the commitment from Florence County of a $1,000,000 grant, the validity of which is here challenged Thus, by drawing upon the financial resources of the several participants as above indicated, the figure of $28,441,861, which is the total anticipated cost of the project, is attained.

The terms of the lease between Pee Dee and McLeod are significant to the issues in this case. This lease agreement was entered into between the parties on January 12, 1976, and has been made a part of the record in this case. From the above recital of the financing plan, it is noted that the funding resources of McLeod constitute the overwhelming portion of the total construction costs. The improvements resulting from the funds to be expended by McLeod in the construction of the hospital are designated as leasehold improvements and McLeod is granted the right to mortgage such leasehold improvements as security for its construction loans. However, fee simple title to the land and the buildings is to remain in Pee Dee, subject to the terms of the lease. It is the expressed intention of the parties that

the rent payable by McLeod to Pee Dee shall be so fixed as to net to Pee Dee a sum equal to all expenses incurred by it of whatsoever nature in connection with the ownership of the leased premises and the leasing of the same to the tenant.

Certatin commitments by McLeod were required by the City of Florence as a condition of granting the land to Pee Dee for the project, and are further required by Pee Dee under its lease agreemeent with McLeod. These provisions require McLeod to maintain a policy of having its facilities available to the public in general without restriction to any particular class of persons or patients. It is required to maintain an emergency room and medicare and medicaid patients as well as county sponsored welfare patients must be accepted. The lease contains a detailed listing of the services and facilities that McLeod will be required to maintain, some of the specified services and facilities undertaken by McLeod not being presently available in the Pee Dee area. The institution must maintain accreditation with approved hospital accreditation agencies and it must periodically file copies of its financial reports with Pee Dee and with the City of Florence.

It is in this context that the issues raised by plaintiff arise. These issues will be treated under four questions.

QUESTION 1. *Does the County grant violate either Article X, § 5 or Article X, § 6, of the State Constitution?*

Article X, § 5 of the State Constitution provides in pertinent part:

"The corporate authorities of counties . . . may be vested with power to assess and collect taxes for corporate purposes . . ."

Article X, § 6 provides in part:

"The credit of the State shall not be pledged or loaned for the benefit of any individual, company, association or corporation; and the State shall not become a joint owner

of or stockholder in any company, association or corporation . . . The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, County officers, and for litigation, quarantine and court expenses and for ordinary County purposes to support paupers, and pay past indebtedness . . ."

Both of these constitutional provisions were raised in the case of *Bolt v. Cobb,* 225 S. C. 408, 82 S. E. (2d) 789 (1954). That case questioned the authority of the County of Anderson to issue $1,000,000 in County general obligation bonds for the purpose of constructing a hospital facility to be leased to the Anderson County Hospital Association, a private eleemosynary corporation. The new hospital building was to be constructed on land granted the County without cost by the City of Anderson, and the facility was to be leased to the private eleemosynary corporation without the requirement of any monetary rent. The lease between the County and the private eleemosynary corporation was to be consummated on terms that were mutually satisfactory to meet the public interest. In *Bolt* the County was paying the entire cost of constructing a new building to be located adjacent to an existing building of the private hospital association.

This Court concluded in *Bolt* that the expenditure by Anderson County of $1,000,000 in that manner did not violate Article X, § 5 or Article X, § 6. In upholding the public purpose of the transaction this Court stated:

"In this instance Anderson County is providing for the performance of a public, corporate function through the agency of the existing non-profit and non-sectarian hospital, whose room facilities have become inadequate to meet the present need for more beds. It is common knowledge that there are other counties in the State which are without

publicly-owned and operated hospitals and they aid other existing hospitals, in one form or another, in order to procure hospitalization for their needy sick."

The decision of this Court in *Bolt* was based on the earlier decision of *Battle v. Willcox,* 128 S. C. 500, 122 S. E. 516 (1924). That case involved the sale of bonds by Marion County on behalf of Reaves Township for the purpose of purchasing a site, erecting and equipping a hospital in Mullins. This case upheld the bond issue as being within the corporate purpose of the township under Article X, § 5 and within the authority to tax under Article X, § 6. This Court stated:

"We do not understand that it is contended in this connection that the erection and maintenance of a hospital is not a legitimate function of government, or that an enterprise of that character may not properly be held to subserve a public purpose within the meaning of the right to tax. That, in the light of modern knowledge as to the intimate relation of the public health to the public welfare, whether regarded from a social, economic, or moral standpoint, a hospital is such an institution or utility as directly subserves a public use within the meaning of the governmental power to tax for a public purpose, is, as we apprehend, not open to serious question."

In *Battle* the act in question authorized the hospital commission by contract or lease to transfer the operation of the hospital to other parties on such terms and for such number of years as they deemed to be in the best interest of the community.

It should be noted that in the *Bolt* case the entire cost of constructing the hospital facility was borne by Anderson County, while in this case Florence County is contributing only a small fraction of the total costs of the hospital construction. Another favorable feature of the present case as compared to *Bolt* and *Battle* is the fact that in neither of these cases did this Court have before it a proposed lease

to the tenant which would permit it to determine whether constitutional purposes were being safeguarded in the ultimate use of the facility. In the present case, Pee Dee and McLeod have executed a comprehensive lease agreement which has been filed with the record before us. In both *Bolt* and *Battle,* this Court left the terms of the authorized lease to the good faith of the concerned public officials to assure that the constitutional purposes stated in the authorizing legislation would be preserved.

Plaintiff contends that the effect of the lease agreement between Pee Dee and McLeod is such as to make them "joint owners" of the facility contrary to the specific prohibition contained in Article X § 6. The magnitude of the project here proposed, the accommodation of it to the special features of the joint financing plan, and the long-term nature of the tenancy are not factors conducive to simplicity. While some of the provisions of the lease are ambiguous, we are here warranted in construing the lease agreement only to the extent necessary to determine its sufficiency to withstand the constitutional assaults made upon it in this case. We conclude that the lease agreement purports to and does retain to Pee Dee the status of landlord and grants to McLeod the status of tenant, and not "joint owners" as prohibited by § 6. Throughout the lease run provisions to protect the interests of the landlord and in turn the public in the facilities, but we do not deem these protective measures of such import as to create a state of joint ownership in any constitutionally prohibited sense.

It is contended by plaintiff that § 26 of the lease agreement, which permits McLeod to sub-let space, clinics, laboratories, and concessions within the hospital as a measure of providing such services consistent with sound hospital operational practice, destroys the character of the hospital as a public building. This section further provides that the entire demised premises shall not be sublet nor the lease assigned without the written consent of

Pee Dee. We find that the qualified right to sub-let is merely incidental to and does not alter the primary function of the building, which is to house and treat patients in a hospital containing 300 beds. This contention is without merit.

The final contention of plaintiff under Question 1 is that § 13(4) of the lease requiring the County to reimburse McLeod at full cost for County sponsored welfare patients destroys the public character of the hospital. Under the terms of the lease, McLeod is required to accept certified County sponsored welfare patients. This requirement is of significant benefit to the County in that it provides it with a hospital facility which is legally obligated to accept those welfare patients referred by the County. The fact that the County is to pay McLeod for such treatment is simply a recognition of financial reality. The high operational cost of a hospital is a matter of common knowledge. If McLeod were to agree to non-reimbursement for County welfare patients, it would result in an increase in charges to paying patients as the only means of compensating for the loss in income occasioned by its welfare patients. By reason of the provisions for reimbursement to McLeod, the costs of treatment of welfare patients would be spread among all County taxpayers rather than the limited segment of the public constituting the paying patients of McLeod. We do not feel that the public character of the project is adversely affected by such provision for reimbursement.

This Court is guided by the *Bolt* and *Battle* cases, *supra,* to the conclusion that the proposed grant by Florence County to Pee Dee is clearly within the County's corporate purposes for which the expenditure of tax funds is authorized and, for the reasons hereinabove stated, it is our opinion that the provisions in the lease agreement between Pee Dee and McLeod asserted by the plaintiff do not invalidate the proposed grant under either § 5 or § 6 of Article X of the State Constitution.

QUESTION 2. *Does the County grant violate
Article XI, § 4 of the State Constitution?*

This article prohibits any public funds to be paid by any political subdivision of this State for the direct benefit of any religious or other private educational institution.

Plaintiff points to the following provision of § 8 of the lease as being offensive:

"The Tenant may operate such medical ancillary facilities as may be desirable for a full service regional hospital and referral center and carry out medical research and education. The premises shall not be used for any purpose inconsistent with the foregoing."

The obvious, basic intent of this provision is to permit the training of nurses and interns, a universally accepted function of a hospital of the size here contemplated. These educational functions are positive factors in treating the sick, and it is illogical to conclude that such functions would convert the facility into a private educational institution within the language of the constitution.

While the contention is not made that the facility offends the religious prohibition, it should be noted that the corporate charter of McLeod reveals that it is not religious in character or purpose.

QUESTION 3. *Does the statute under which Pee Dee exists violate Article 3, § 34 of the State Constitution?*

Article 3, § 34 of the State Constitution prohibits special legislation. Pee Dee was created by Act. No. 96, Acts and Joint Resolutions of South Carolina, 1973.[1] This Act provided for the creation of only the above-named Health Services District, composed of the Counties of Chesterfield, Darlington, Dillon, Florence, Marion and Marlboro. This District was organized pursuant to this enactment and has functioned at least to the

---

[1] S. C. Code § 32-904.11 *et seq.* (1962).

extent of actively participating in the planning of the project here proposed. In apparent recognition of the vulnerability of the 1973 Act to constitutional attack as special legislation, the General Assembly recently passed a statute providing for the creation of Regional Health Districts being designated as R524, H3092, Acts and Joint Resolutions of South Carolina, 1976. This act is state-wide in its application and became effective upon its approval by the Governor on March 2, 1976. It authorizes any County or group of Counties in this State to form a health services district by enactment of the governing bodies of the Counties involved. Copies of enactments creating the districts are required to be filed with the Secretary of State. Defendants do not urge the validity of the 1973 Act, but place their reliance upon the 1976 Act. Although § 11 of the 1976 Act contains a provision continuing Pee Dee's existence until it is reconstituted under the 1976 Act, not later than January 1, 1977, the position of plaintiff is that Pee Dee is an unconstitutional body until and unless it is reconstituted under the 1976 state-wide Act. We find merit in this position. However, at this time the County of Florence has disbursed nothing to Pee Dee. While it has made an appropriation to Pee Dee, it has imposed as a condition of disbursing the funds that Pee Dee be established under the 1976 state-wide Act. This will require enactments by the respective governing bodies of the Counties to be included in the District, copies of such enactments to be filed with the Secretary of State.

Florence County is further requiring confirmation that the lease agreement between Pee Dee and McLeod executed on January 12, 1976, continues in force at the time of the disbursement of funds. There is no contention by plaintiff that the 1976 Act is invalid by reason of it being special legislation as prohibited by the Constitution. Since a disbursement of the funds is contingent upon Pee Dee being reconstituted in accordance with the 1976 Act and it thereafter ratifying or re-executing the lease agreement, it is our

conclusion that any constitutional defect in the original statute would thus not affect any aspect of the proposed project at the time the funds are to be disbursed.

QUESTION 4. *Is the activity of Pee Dee in participating in this project within its statutory authority?*

Plaintiff questions the adequacy of the statutory authority granted Pee Dee in the 1976 Act to permit it to play the role planned by it in the proposed project. We deem this contention without merit. The authority of health services districts to enter into transactions of the type here proposed is fully set forth in § 6 of the Act which enumerates the powers and duties of the Boards of health services districts. Subsection 14 clearly authorizes transactions of the type here involved with the following power granted:

"(14) Lease land or any hospital facility to any public or private hospital upon such terms, conditions and for such length of time as it may determine to be appropriate consistent with the purpose of providing health care services for the district."

Other enumerated powers in § 6 of the Act include the ownership of land, the building of regional health care facilities, and the providing for the operation of regional health care facilities. A district is authorized to apply for public grants under which category the grant from Florence County would fall.

Section 10 of the Act requires health care districts to assist the development of non-profit hospitals such as McLeod consistent with health plans developed under federal law. McLeod has been issued a certificate of need by the South Carolina Department of Health and Environmental Control for the construction of the new 300 bed hospital to replace its inadequate existing facility. The public need for the new hospital is further reflected in the record by the high priority accorded this project by both state and federal

financing agencies. Thus, the activity of Pee Dee is consistent with the policy considerations set forth in § 10 of the Act.

We conclude that Pee Dee is possessed of ample statutory authority under the 1976 Act to participate in the project to the extent here proposed.

While plaintiff has alleged in his complaint that the proposed grant by Florence County would deprive him of property without due process of law in violation of Article 1, Section 3, of the State Constitution, it has not been argued in his brief. We have examined this contention, however, in the context of the record and conclude it is without merit.

It is, therefore, the judgment of this Court that the grant of $1,000,000 by the County of Florence to the Pee Dee Regional Health Services District for the purpose stated does not violate the provisions of the State Constitution raised by the plaintiff, nor does the participation of Pee Dee in the proposed project exceed its statutory authority; provided, however, that the above judgment is predicated upon the condition that prior to the disbursement of the grant, or any portion thereof, Pee Dee shall be reconstituted under the 1976 Act and it shall, after such reconstitution, ratify the lease agreement entered into with McLeod on January 12, 1976.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.